**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JENNIFER MYERS** | : | **CASE NO.: 3:18-cv-00409** |
| **Plaintiff,** | : | **Judge Thomas Rose** |
| vs. | : | **MOTION OF DEFENDANTS** |
| | | **MONTGOMERY COUNTY** |
| **MONTGOMERY COUNTY** | : | **BOARD OF COUNTY** |
| **BOARD OF COMMISSIONERS, et al.** | | **COMMISSIONERS AND** |
| | : | **MONTGOMERY COUNTY** |
| **Defendants.** | | **SHERIFF ROB STRECK TO** |
| | : | **DISMISS PLAINTIFF'S COMPLAINT** |
| | | **PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Montgomery Board of County Commissioners and Montgomery County Sheriff Rob Streck (hereafter "Montgomery County Defendants") respectfully move this Court for an order dismissing all claims.  A Memorandum in support of this Motion follows.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: /s/Benjamin A. Mazer
Benjamin A. Mazer (0087756)
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 West Third Street, P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 496-7176
Fax Number: (937) 225-4822
E-mail:mazerb@mcohio.org

and

By:/s/Anne M Jagielski
Anne M. Jagielski (0093047)
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 W. Third Street
P.O. Box 972
Dayton, OH 45422
Telephone: (937) 496-7195
E-mail: jagielskia@mcohio.org

Attorneys for Defendants Montgomery
County Board of County Commissioners
and Sheriff Rob Streck

## TABLE OF CONTENTS AND SUMMARY OF ARGUMENTS

**Combined Table of Contents** ................................................................ iii

**Loc.R.7.2 Summary** ........................................................................ v

**Table of Authorities** ..................................................................... vii

**Introduction and Procedural History** ................................................. 1

**Factual Allegations** ....................................................................... 1

**Applicable Standard** ...................................................................... 2

**Argument** .................................................................................. 3

    **A.** Sheriff Streck is entitled to qualified immunity in his individual capacity from Plaintiff's excessive use of force claim ....................................... 3

    **B.** Plaintiff fails to allege facts showing that County Defendants were deliberately indifferent to Plaintiff's Medical needs .......................... 6

    **C.** Plaintiff fails to allege facts making it plausible that the County Defendants were deliberately indifferent to a known risk for Plaintiff's Substantive Due Process Claim ............................................................................. 8

    **D.** Plaintiff's Equal Protection Clause fails as a matter of law, as Plaintiff cannot set forth facts showing intentional discrimination .......................... 10

    **E.** Plaintiff's *Monell* Claims must be dismissed as a matter of law, as Plaintiff has not demonstrated that an official policy or custom was the moving force behind any Constitutional deprivations ............................................ 11

        **i.** Plaintiff fails to identify an illegal official policy that was the 'moving force' behind Plaintiff's alleged constitutional deprivations .............. 15

        **ii.** A *Monell* ratification theory does not abrogate the requirement that a policy be the moving force behind the constitutional harms ............... 18

        **iii.** Plaintiff has not identified a pattern of sufficiently similar unconstitutional conduct to state a *Monell* claim .................................. 19

        **iv.** No specific training is necessary to inform officers not to rape or sexually assault women in their custody ............................................ 20

v. **Plaintiff fails to state a *Monell* claim under a failure to supervise theory, as sexual assault is not a plainly obvious consequence of a lack of supervision and Defendant Villella was not a known risk**................24

F. **County Defendants are entitled to statutory immunity pursuant to Ohio Revised Code 2744 from Plaintiff's state law claims of breach of duty of care and intentional infliction of emotional distress** ................................................26

i. **The Montgomery County Board of County Commissioners is immune from liability in its official capacity**........................................26

ii. **Sheriff Streck is immune from Plaintiff's state law claims in his individual capacity**................................................................27

iii. **Defendant Sheriff Streck is entitled to statutory immunity under Ohio Rev. Code §311.05**................................................................29

**Conclusion** ................................................................................................**29**

**Certificate of Service**................................................................................**30**

iv

**LOC. R. 7.2 Summary**

**1.** Factual Allegations [Section II]
This section of the brief, beginning on page 1, provides the fact section for the brief derived from the factual allegations contained within the Plaintiff's Complaint.

2. Plaintiff has fails to allege facts showing that the County Defendants violated Plaintiff's 14th and/or 8th Amendment Constitutional Rights to be free from Excessive Use of Force and Sheriff Streck is entitled to qualified immunity in his individual capacity [Section IV (A)]

   This section of the brief, beginning on page 3, argues that Plaintiff fails to plead facts showing that County Defendants individually violated Plaintiff's constitutional rights under the 14th or 8th Amendment. In support of this argument, County Defendants rely on  Horn v. Madison County Fiscal Court, 22 F.3d 653, 656 (6th Cir. 1994); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002).

3. Plaintiff fails to plead facts to make it plausible that the County Defendants were deliberately indifferent to Plaintiff's serious medical need under the Due Process Clause[Section IV (B)]

   This section of the brief, beginning on page 6, argues that Plaintiff failed to allege facts that the County Defendants were deliberately indifferent to her serious medical need. County Defendants rely upon Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed 811 (1994); Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997); *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015).

4. Plaintiff fails to plead requisite facts to make it plausible that there was a deliberate indifference to a known risk for Plaintiff's right to bodily integrity claim under the Due Process Clause [Section IV (C)]

   This section of the brief, beginning on page 8, argues that Plaintiff fails to plead facts showing that there was any known risk associated with Defendant Villella that County Defendants failed to protect the Plaintiff from. In support of this argument, County Defendants rely upon *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998). *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.1993); *Santiago v. Lane,* 894 F.2d 218, 225 (7th Cir. 1990).

5. Plaintiff  fails to plead facts showing intentional discrimination or that male and female inmates are treated differently in the Montgomery County Jail, as required to state an Equal Protection Clause claim [Section IV (D)]

This section of the brief, beginning on page 10, argues that Plaintiff fails to plead facts showing there was intentional discrimination on the basis of Plaintiff's gender. In support of this argument, County Defendants rely upon *Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir. 1995); *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir.1998); *Purisch v. Tennesee Technological University,* 76 F.3d 1414, 1424 (6th Cir. 1996); *Doe v. Ohio State University,* 323 F.Supp.3d 962, 971 (S.D. Ohio 2018); *Women Prisoners v. District of Columbia,* 93 F.3d 910, 924-27 (D.C. Cir. 1996); *Klinger v. Department of Corrections,* 31 F.3d 727 (8th Cir. 1994).

6.  Plaintiff has not plead with requisite particularity an official policy or custom that was the moving force behind her alleged constitutional deprivations [Section IV (E)]

This section of the brief, beginning on page 11, argues that Plaintiff fails to identify with requisite particularity an official policy or custom of Montgomery County that was the moving force behind her constitutional deprivations. In support of this argument, County Defendants rely upon *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978); *Board of County Comm'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011); *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986); *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014)(quoting *Monell,* 436 U.S. at 692); *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**7.**  For *Monell* purposes, sexual assault or rape cannot be an official policy, practice or custom, as criminal conduct does not constitute a municipal policy. Also a corrections officer is not a final policy-maker. [Section IV (E(i))]

This section of the brief, beginning on page 15, argues that rape or sexual assault has not been recognized by federal courts as constituting an official policy because it is criminal conduct and not in furtherance of a governmental high-level overall plan. In support of this argument, County Defendants rely upon *Wooten v. Logan*, 92 Fed.Appx. 143, 146 (6th Cir.2004); *Doe v. Patton*, 381 F.Supp.2d 595, 597 (E.D.Ky.2005).

8.  In order to state a *Monell* ratification claim, the Plaintiff must still set forth sufficient facts making it plausible that an official policy was the moving force behind the constitutional deprivation. [Section IV (E(ii))]

This section of the brief, beginning on page 18, argues that pursuant to a *Monell* ratification theory, Plaintiff must still set forth facts articulating an official policy or practice that was the moving force behind the deprivation. Further, post-injury ratification is not sufficient to demonstrate causation. In support of this position, County Defendants rely upon *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Tompkins v. Frost,* 655 F.Supp. 468, 472 (E.D. Mich. 1987); *McGee v. Madison Cty., Tennessee*, 2017 WL 6804233, *8 (Oct. 31, 2017).

9. Plaintiff has not identified a pattern of sufficiently similar unconstitutional conduct, such as other allegations of rape or sexual assault, to state a *Monell* claim. [Section IV (E(iii))]

   This section of the brief, beginning on page 19, argues that pursuant to a pattern of unconstitutional conduct *Monell* theory, Plaintiff must set forth a pattern of conduct that has substantially similar claims and relevant facts in order to place the County Defendants on notice of a deficiency. Plaintiff identifies a number of ongoing and former lawsuits against Montgomery County, but none of them raise allegations of rape or sexual assault, making them insufficient for demonstrating a pattern of similar unconstitutional conduct. In support of this argument, County Defendants rely upon *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).

10. Plaintiff's failure to train claim fails as federal courts have not recognized that any specific training is needed to inform officers not to rape or sexually assault inmates in their custody. [Section IV (E(iv))]

    This section of the brief, beginning on page 20, argues that there is no recognized requirement under *Monell* federal caselaw that training for law enforcement officers specifically on the illegality of rape or sexual assault is necessary in order to prevent sexual assault. In support of this argument, County Defendants rely upon *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992); *Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999); *Andrews v. Fowler,* 98 F.3d 1069, 1077 (8th Cir. 1996); *Campbell v. Anderson County,* 695 F.Supp. 2d 764, 774 (E.D. Tenn. 2010); *Doe #1 v. Cravens,* 2018 WL 1522401, *2 (Mar. 28, 2018).

11. Plaintiff's *Monell* claim under a theory of failure to supervise fails, as sexual assault is not a plainly obvious consequence of a lack of supervision and Defendant Villella was not a known risk. [Section IV (E(v))]

    This section of the brief, beginning on page 23, argues a failure to supervise argument fails as a matter of law as rape or sexual assault is not a plainly obvious consequence of a failure to supervise. In support of this position, County Defendants rely upon *Gregory v. City of Louisville,* 444 F.3d 725, 752 (6th Cir. 2006); *Campbell v. Anderson Cty.,* 695 F.Supp.2d 764, 775 (E.D.Tenn.2010); *Doe v. Cunningham,* 2006 WL 2819600, at *2 (W.D.Va. Sept. 28, 2006); *Hays v. Jefferson County, Ku.,* 668 F.2d 869, 874 (6th Cir. 1982).

12. County Defendants are statutorily immune from Plaintiff's state law claims of intentional infliction of emotional distress and breach of duty of care pursuant to Ohio Revised Code § 2744 and Ohio Revised Code § 311.05. [Section IV (D)]

    This section of the brief, beginning on page 25, argues that the County Defendants are entitled to statutory immunity from Plaintiff's state law claims as Plaintiff does not identify an exception to the general grant of immunity afforded pursuant to Ohio Revised Code § 2744.

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Allen v. Leis*, 154 F. Supp. 2d 1240, 1259 (S.D. Ohio 2001) ...........................................................6

*Anderson v. Massillon*, 983 N.E.2d 266, 267 (Ohio 2012)............................................................28

*Andrews v. Fowler,* 98 F.3d 1069, 1077 (8th Cir. 1996) ..............................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ....3, 16, 21

*Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998)......................................8, 9, 10, 12, 23

*Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979) ................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)......................................................................................................................2, 3, 16, 21

*Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 898 (6th Cir. 2004)...........................................7, 8

*Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015)......................................................................7

*Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) .........................................................................6

*Board of County Comm'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)...................................................................................................7, 9, 10, 12, 14, 15

*Boulton v. Swanson*, 795 F.3d 526, 531 (6th Cir. 2015).............................................................14

*Breland v. City of Centerville, Ga.,* 2008 WL 2233595 (M.D. Ga. May 28, 2008) ....................23

*Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013)..................................................................9

*Campbell v. Anderson County,* 695 F.Supp. 2d 764, 774 (E.D. Tenn. 2010).........................22, 24

*Carpenter v. Scherer-Mountain Ins. Agency* (1999), 135 Ohio App.3d 316, 330, 733 N.E.2d 1196...........................................................................................................................26

*Cash v. Hamilton County Dept. of Adult Probation,* 388 F.3d 539, 542–43 (6th Cir.2004)........10

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)....................................................21, 24

*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d. 313 (1985).................................................................................................................10

*City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988)...........................................................18

*Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002).............................................................5

*Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011) ........................................................12, 13, 20

*D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014)........................................................13

*Doe #1 v. Cravens,* 2018 WL 1522401, *2 (Mar. 28, 2018) ................................................22, 23

*Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996) .....................................................13

*Doe v. Cunningham,* 2006 WL 2819600, at *2 (W.D.Va. Sept. 28, 2006) .................................25

*Doe v. Magoffin Cty. Fiscal Court*, 174 Fed.Appx. 962 (6th Cir.2006)......................................14

*Doe v. Ohio State University,* 323 F.Supp.3d 962, 971 (S.D. Ohio 2018) ..................................10

*Doe v. Patton*, 381 F.Supp.2d 595, 599 (E.D.Ky.2005) ........................................................14, 17

*Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)............................................4

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690,
700 (6th Cir. 2006)......................................................................................................................20

*Estelle v. Gamble*, 429 U.S. 97 .....................................................................................................6

*Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 34-35 (Ohio 1994) .........................28

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed 811 (1994)...................6, 7, 8

*Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008) ........................................14

*Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir. 1995) ..........................................................10

*Gregory v. City of Louisville,* 444 F.3d 725, 752 (6th Cir. 2006); *Campbell v. Anderson Cty.*, 695
F.Supp.2d 764, 775 (E.D.Tenn.2010).........................................................................................24

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) ..........................................................................................5

*Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008) ......................................................................7

*Hays v. Jefferson County, Ku.,* 668 F.2d 869, 874 (6th Cir. 1982)..............................................25

*Hill v. City of Cincinnati*, S.D. Ohio No. 1:09–cv–800, 2010 WL 3257725,
at *5 (July 16, 2010) ...................................................................................................................21

ix

*Horn v. Madison County Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994) ....................................4

*Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993) ........................................................8, 9

*Hubbard v. Canton City School Bd. of Edn*. 97 Ohio St.3d 451, 780 N.eE.2d 543 (2002).....28, 29

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)....................................................................................4

*Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 453-54, 602 N.E.2d 363 ...28

*Johnson v. Gannon*, No. 3:09–0551, 2010 WL
1658616, at *4 (M.D. Tenn. Apr. 23, 2010) ..................................................................................20

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985)..............................................................................5

*Klinger v. Department of Corrections,* 31 F.3d 727 (8th Cir. 1994) ...............................................11

*Lewis v. Pugh,* 2007 WL 1394145 (E.D. Tex. May 11, 2007), *aff'd,* 289 Fed.Appx. 767 (5th Cir.
2008) ...............................................................................................................................................23

*Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999) ........................................................22

*McGee v. Madison Cty., Tennessee*, 2017 WL 6804233, *8 (Oct. 31, 2017)................................14

*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1986) ................................................................................4

*Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56
L.Ed.2d 611 (1978) ............................................................4, 9, 11, 12, 13, 14, 15, 18, 19, 20, 22

*Morr v. Crouch*, 249 N.E.2d 780, 784 (Ohio 1989) ......................................................................29

*Napier v. Madison Cty.,* 238 F.3d 739, 742 (6th Cir. 2001) .........................................................7, 8

*Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ................13

*Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986) ......................................................13, 16, 17, 18

*Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007)...........................................13

*Purisch v. Tennesee Technological University,* 76 F.3d 1414, 1424 (6th Cir. 1996)....................10

*Range v. Douglas*, 763 F.3d 573, 582-83 (6th Cir. 2014)..............................................................26

*Royles v. Springfield Twp. Ohio*, S.D. Ohio No. 1:06–CV–376, 2009 WL 483826, *6 (Feb. 25,
2009) ...............................................................................................................................................21

*Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992) ...........................................21, 22

*Sanford v. Cty. Of Lucas*, No. 3:07 CV 3588, 2009 WL 723227, at *8 (N.D. Ohio, Mar. 16, 2009) .............................................................................................................................................26

*Santiago v. Lane,* 894 F.2d 218, 225 (7th Cir. 1990) ...............................................................4

*Santiago v. Ringle,* 734 F.3d 585 (2013) .....................................................................................8

*Saucier v. Katz*, 533 U.S. 194 at 200 (2001)................................................................................4

*Scrap Yard, LLC v. City of Cleveland*, N.D. Ohio No. 1:10 CV 2465, 2011 WL 3900571, at *4 (Sept. 6, 2011) ..........................................................................................................................21

*Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) .................10

*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ....................................................4

*Smith v. City of Salem, Ohio,* 378 F.3d 566, 577 (6th Cir. 2004) .................................................10

*State of Ohio v. Franco R. Villella,* Montgomery County Court of Common Pleas, Case No. 2018 CR 04699 ...............................................................................................................................14

*Thomas*, 398 F.3d at 430–31................................................................................................21

*Tompkins v. Frost,* 655 F.Supp. 468, 472 (E.D. Mich. 1987)........................................................19

*Tracy v. Tinnerman*, No. 2003–CA–21, 2003 WL 22927758, at *2 (Oh. Ct. App., Dec. 12, 2003)........................................................................................................27

*Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259-60, 96 L.Ed.2d 64 (1987)...............11

*Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976)...............................................................6, 7

*Williams v. Bd. of County Comm'rs of United Govt. of Wyandotte Cty.,* 2000 WL 1375267 (D.Kan. Aug. 30, 2000) ....................................................................................................23

*Women Prisoners v. District of Columbia,* 93 F.3d 910, 924-27 (D.C. Cir. 1996) .......................11

*Wooten v. Logan*, 92 Fed.Appx. 143, 144 (6th Cir.2004)..................................................15, 16, 17

*Young v. Mahoning County, Ohio,* 418 F.Supp.2d 948, 958 (N.D. Ohio 2005)...........................10

**Statutes:**

42 U.S.C. § 1983 .......................................................................................5, 6, 10, 11, 12

Ohio Rev. Code § 2744.01(C)(2)(a) .................................................................22

Ohio Rev. Code § 2744.02(B)(1)-(5) ...............................................................22

Ohio Rev. Code § 2744.02 ................................................................................22

Ohio Rev. Code § 2744.03 ................................................................................22

Ohio Revised Code 2744.03(A)(6) ...................................................................22

Ohio Rev. Code § 311.05 ..................................................................................24

**Rules:**

Federal Rule of Civil Procedure 12(b)(6) ......................................................2, 3

<u>MEMORANDUM IN SUPPORT</u>

I.      **INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Jennifer Myers filed her Complaint against Defendants Montgomery County Board of County Commissioners, Montgomery County Sheriff Phil Plummer (now Sheriff Rob Streck) and former Corrections Officer Franco Villella on December 18, 2018. Doc. No. 1. The Complaint sets forth federal and state law claims against the Defendants arising out of an alleged incident occurring in the Montgomery County Jail on December 11, 2018, while the Plaintiff was an inmate in the facility. *Id.* The Montgomery Board of County Commissioners is named in its official capacity. *Id.* The Montgomery County Sheriff is named in his individual and official capacities. *Id.* This Motion to Dismiss is filed on behalf of the Montgomery County Board of County Commissioners and Montgomery County Sheriff Rob Streck as to all claims raised by the Plaintiff.

II.     **FACTUAL ALLEGATIONS**

Plaintiff was an inmate in the Montgomery County Jail on December 11, 2018. Doc. No. 1, PID 3, at ¶ 8. On said date, Defendant Villella was on duty and in uniform at the Montgomery County Jail as a corrections officer. *Id.* at ¶ 9. According to the Complaint, Defendant Villella ordered the Plaintiff and a cellmate to leave their cell and sweep a section of the jail where another inmate had received a haircut, against the orders of a supervisor. *Id.* at ¶ 10.  After doing so, Defendant Villella returned the Plaintiff and other inmates to their respective cells. *Id.*

Plaintiff contends approximately fifteen minutes later, Defendant Villella returned to Plaintiff's cell and opened it, ordering the Plaintiff to come with him to a dark dorm room in a separate area of the Jail. *Id.* at ¶ 11. The Complaint contends that Defendant Villella then ordered Plaintiff into a secluded bathroom stall and forced the Plaintiff to engage in sexual intercourse

1

with him. *Id.* at ¶ 12. Plaintiff alleges she immediately reported the sexual assault to officers, but was denied medical care for her injuries. *Id.* at ¶¶13-14. Plaintiff alleges that instead of being provided medical care after she reported the incident, Plaintiff was placed in a cold cell with no blanket, mat or pillow for hours. *Id.* at ¶ 15. Plaintiff was subsequently taken to a room with a window and forced to remove all of her clothes with male officers watching. *Id.* After doing so, Plaintiff was transported to Miami Valley Hospital for medical treatment. *Id.* Plaintiff's Complaint indicates that after she reported the rape and assault, Montgomery County Corrections Officers collected the jumpsuit as evidence and Miami Valley Hospital employees collected forensic evidence. *Id.* at ¶¶15-16.

According to the Plaintiff, in the months prior to December 11, 2018 and while Plaintiff was in custody in the Montgomery County Jail, Defendant Villella "stalked her while on duty and in uniform." *Id.* at ¶ 18. Plaintiff alleges Defendant Villella would enter Plaintiff's cell without permission and without a female corrections officer with him on multiple occasions. *Id.* Plaintiff contends Defendant Villella did not have Plaintiff's consent to engage in the conduct that allegedly transpired on the date of the incident. *Id.* at ¶ 20. On December 13, 2018, two days after the incident, Plaintiff was transferred to Greene County Jail. *Id.* at ¶ 23.

## III.    APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).

A claim possesses facial plausibility when the plaintiff pleads sufficient factual content to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* at 556. The plausibility standard asks for greater than a mere possibility that a defendant has conducted himself unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Pleadings that are no more than conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While legal conclusions can provide the framework of a complaint, *Twombly* necessitates that they be supported by factual allegations. *Id.*

## IV. ARGUMENT

Plaintiff's Complaint fails to state a claim, as to all causes of action, against Defendants Montgomery County Board of County Commissioners and Montgomery County Sheriff Rob Streck (hereafter "County Defendants"). Plaintiff fails to plead facts that would support liability on the part of the County Defendants in this matter and a dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6) is warranted.

### A. Sheriff Streck is entitled to qualified immunity in his individual capacity from Plaintiff's excessive use of force claim

Plaintiff alleges that the County Defendants used excessive force, violating Plaintiff's rights guaranteed by the Eighth and Fourteenth Amendments to the Constitution. Doc. No.1, PID 9, at ¶ 58. Plaintiff contends that only Defendant Villella actually applied excessive force; however, the County Defendants are liable for the alleged excessive use of force "under the doctrines of respondeat superior, ratification, estoppel, and/or principal/agent." Doc. No.1, PID 9, at ¶ 50. Section 1983 establishes "a cause of action for deprivation under color of state law of any rights, privileges or immunities secured by the Constitution or laws of the United States."

3

*Horn v. Madison County Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994). To prevail on this claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The County Defendants cannot be liable under a *respondeat superior* theory and Sheriff Streck is entitled to qualified immunity in his individual capacity. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Sheriff Streck must be dismissed in his individual capacity as he is entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Qualified immunity "is an immunity from suit rather than a mere defense to liability; (…) it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1986). As such, a ruling on the defense of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194 at 200 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Once a law enforcement official has raised the defense of qualified immunity, the plaintiff has the burden of establishing that the law enforcement official is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

The record contains no allegations that Sheriff Streck was involved in any manner with the alleged use of force or sexual assault on the Plaintiff. Plaintiff asserts that Defendant Villella applied the force and there are no facts alleged supporting any involvement of Sheriff Streck in

4

the alleged incident. For this reason alone, the individual capacity claim against Sheriff Streck should be dismissed as Sheriff Streck is entitled to qualified immunity. However, with regard to Plaintiff's attempt to assert a supervisory claim against Sheriff Streck, mere negligence in his alleged supervision is insufficient to support liability. *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002). The Sixth Circuit has explained this claim as follows:

> A supervisory official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff demonstrates that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.

> *Combs*, 315 F.3d at 558. (Internal citations omitted).

As Plaintiff has not and cannot plead the Montgomery County Defendants encouraged the alleged sexual assault of the Plaintiff or actively participated in such, the County Defendants must be granted qualified immunity from this claim.

It has long been established in the jurisprudence of 42 U.S.C. § 1983 that an official capacity suit is, in all respects other than name, a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Official-capacity suits (…) 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991), quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). As to the claim against Sheriff Streck and the County Commissioners in each of their official capacities, a suit against individual defendants in their official capacities is essentially the same as a suit against the County and is therefore duplicative. See *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). As such, all

the official capacity claims against Sheriff Streck must be dismissed as duplicative of the claims against Montgomery County. See *Allen v. Leis*, 154 F. Supp. 2d 1240, 1259 (S.D. Ohio 2001). County Defendants address the Plaintiff's *Monell* and official capacity claims below.

### B. Plaintiff fails to allege facts showing that County Defendants were deliberately indifferent to Plaintiff's Medical needs.

Plaintiff fails to set forth sufficient facts to support Plaintiff's claim that the Defendants were deliberately indifferent to Plaintiff's medical needs. A Section 1983 claim asserting a constitutional violation for denial of medical care has objective and subjective components. *Estelle v. Gamble*, 429 U.S. 97, citing *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed 811 (1994). The subjective component requires that the defendant know about the serious medical need and purposefully ignored it. *Id.*

Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence does not constitute deliberate indifference. See, *Estelle*, 429 U.S. at 106. Deliberate indifference "is a stringent standard of fault, requiring proof that a (government) actor disregarded a known or obvious consequence of his action." *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Importantly, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). In order for a defendant to be liable for a civil rights violation, "[t]he contours of the violated right must be sufficiently clear that a reasonable

[government] official would understand that what he is doing violates that right." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015).

The objective component of deliberate indifference to medical need requires a Plaintiff to demonstrate a "sufficiently serious" medical need. *Farmer v. Bernnan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A sufficiently serious medical need has been identified by the Sixth Circuit as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). However, if the plaintiff's claim is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cty.,* 238 F.3d 739, 742 (6th Cir. 2001); *See also Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 898 (6th Cir. 2004). Plaintiff's Second Amended Complaint has not established a serious medical need as is required by the objective component. Plaintiff fails to put the County Defendants on notice through her pleadings with requisite particularity as to what objectively serious medical needs existed that Defendants failed to respond to as constitutionally mandated.

Plaintiff does not allege that she received no medical care, as she states that she was first placed in a cell, then taken to another room, and then transported to Miami Valley Hospital within hours for the treatment that was provided at the hospital. Doc. No. 1, PID 4, at ¶ 15. It is significant to note that Plaintiff was taken to the hospital and therefore, treatment was rendered. As a result, since Plaintiff does not argue she received no treatment, Plaintiff disputes the adequacy of the treatment she received during the period of her detainment in the Montgomery County Jail. *See Santiago v. Ringle,* 734 F.3d 585 (2013) at ¶ 6. In a case involving a claim

based on a failure to treat a condition adequately, "medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore,* 390 F.3d at 898, *See also Napier,* 238 F.3d at 742; *Blosser v. Gilbert,* 422 Fed. Appx. 453, 460-61 (6th Cir. 2011). Plaintiff does not set forth facts supporting any detrimental effect upon her alleged, unspecified injuries as a result of any supposed delay in her medical care prior to being taken to Miami Valley Hospital for treatment.

As to the subjective component, Plaintiff fails to set forth any facts demonstrating that any County Defendants possessed any frame of mind equal to criminal recklessness, which is required under the subjective element. Mere negligence alone is not sufficient to support a constitutional violation. *See Farmer,* 511 U.S. at 834, 839-40, 114 S.Ct. 1970. As a result, Plaintiff fails to set forth sufficient facts at the pleading stage to make it plausible on his face that she has suffered an actionable constitutional violation for deliberate indifference to serious medical need under either the objective or subjective elements.

### C. Plaintiff fails to allege facts making it plausible that the County Defendants were deliberately indifferent to a known risk for Plaintiff's Substantive Due Process Claim

Plaintiff contends that Sheriff Streck, in an official and individual capacity, and the Montgomery County Board of County Commissioners, in its official capacity, deprived Plaintiff of her right to bodily integrity under the Due Process Clause pursuant to 42 U.S.C. § 1983. Doc. No. 1, PID 11, at ¶¶ 68-72. Courts have provided that an "inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993). However, as in *Barney v. Pulsipher,* Plaintiff has failed to show that Sheriff Streck and the Commissioners were deliberately indifferent in failing to protect the Plaintiff from any *known* risk associated with Defendant Villella. *See Barney v. Pulsipher,*

143 F.3d 1299, 1310 (10th Cir.1998)(emphasis added).  Like in *Barney v. Pulsipher,* prior to this alleged incident neither the Sheriff nor the County Commissioners knew of any complaints from female inmates of sexual misconduct from Defendant Villella. *Id.* Accordingly, Plaintiff has failed to demonstrate that the County Defendants acted with the requisite degree of deliberate indifference to make liability plausible and the County Defendants are entitled to qualified immunity. *Id.*

The Tenth Circuit Court of Appeals considered a claim of right to bodily integrity under the Due Process Clause with similar facts in *Hovater v. Robinson,* declaring, that a prison official's failure to protect an inmate from a *known* harm may constitute a constitutional violation. *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.1993); *See also Santiago v. Lane,* 894 F.2d 218, 225 (7th Cir. 1990)(emphasis added). In *Hovater*, the Tenth Circuit determined:

> Sheriff Hill had no knowledge that Mr. Robinson was a threat to the female inmates. Any known harm could stem only from the mere fact of Mr. Robinson's gender. To find a harm present in these circumstances would, in effect, require the conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. […] Had Sheriff Hill possessed information that Mr. Robinson as an individual posed a threat to the safety of female inmates, our decision would be different. […] Sheriff Hill is entitled to qualified immunity.

> *Id.*

Plaintiff fails to meet her burden at the pleading stage to set forth the minimum requisite facts to make it plausible on its face that Sheriff Streck or the County Commissioners were aware of any known risk associated with Defendant Villella that would make them deliberately indifferent to Plaintiff's Due Process rights. As such, the County Defendants are entitled to qualified immunity. As to the claim against Sheriff Streck and the County Commissioners in each of their official capacities, a suit against individual defendants in their official capacities is essentially the same as a suit against the County. See *Monell v. Department of Soc. Servs.*, 436

9

U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). County Defendants address the Plaintiff's *Monell* and official capacity claims below.

### D. Plaintiff's Equal Protection Clause Claim fails as a matter of law, as Plaintiff cannot set forth facts showing intentional discrimination

Branch Four and Branch Five of Plaintiff's Complaint asserts a violation of the Plaintiff's rights under the Equal Protection Clause pursuant to 42 U.S.C. § 1983. Doc. No. 1, PID 12-13, at ¶¶ 79-88. The Equal Protection Clause requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d. 313 (1985). In order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated. *See Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir. 1995)(citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir.1998).

Additionally, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor *intentionally discriminated* against the plaintiff because of membership in a protected class." *Purisch v. Tennessee Technological University,* 76 F.3d 1414, 1424 (6th Cir. 1996)(emphasis added); *see also Smith v. City of Salem, Ohio,* 378 F.3d 566, 577 (6th Cir. 2004). To set forth an Equal Protection claim under the Fourteenth Amendment, the Plaintiff must provide sufficient factual content to demonstrate the she suffered *purposeful* or *intentional* discrimination on the basis of her gender. *Doe v. Ohio State University,* 323 F.Supp.3d 962, 971 (S.D. Ohio 2018)(emphasis added); *see also Young v. Mahoning County, Ohio,* 418 F.Supp.2d 948, 958 (N.D. Ohio 2005).

Plaintiff has not adequately plead that female inmates are subjected to different conditions or face different risks than their male counterparts. Nor has Plaintiff alleged or set

forth any facts to support that Montgomery County Board of County Commissioners or the Montgomery County Sheriff engaged in *purposeful* or *intentional* discrimination against the Plaintiff on the basis of her gender. Absent allegations and facts supporting intentional discrimination on the basis of gender on the part of the County Defendants, from which the Court can reasonably infer intentional discrimination, Plaintiff fails to allege an equal protection claim against the County Defendants.

Further, Plaintiff's assertion that rape and sexual assault is actionable as an Equal Protection violation under 42 U.S.C. § 1983 in a pre-trial detainee context is unfounded. "The Equal Protection Clause in the prison-conditions context is usually invoked to remedy disparities in educational, vocational, and recreational programs offered to male and female inmates. *Id.; See also e.g., Women Prisoners v. District of Columbia,* 93 F.3d 910, 924-27 (D.C. Cir. 1996); *Klinger v. Department of Corrections,* 31 F.3d 727 (8th Cir. 1994). Further, as it pertains to policies of separately housing genders in a jail setting, Courts are hesitant to interfere with prison officials' decisions relating to the administration of the facility, which must be accorded great deference. *See Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259-60, 96 L.Ed.2d 64 (1987).

> **E. Plaintiff's *Monell* Claims must be dismissed as a matter of law, as Plaintiff has not demonstrated that an official policy or custom was the moving force behind any Constitutional deprivations.**

Branch Five and Branch Six of Plaintiff's Complaint are *Monell* claims against the Defendants in their official capacities. Doc. No. 1, PID 12-14, at ¶¶ 79-95. Neither Branch Five nor Branch Six sets forth any facts or allegations that constitute individual capacity claims against the Montgomery County Defendants. A suit against individual defendants in their official

capacities is essentially the same as a suit against the County. See *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious conduct of its employees. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). A municipality is liable when an official policy is the "moving force" behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998). For municipal liability to attach, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights. *Board of County Comm'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

The United States Supreme Court in *Brown* observed that when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward. *See Id.* at 117 S.Ct. at 1388-89. The *Brown* Court distinguished the type of situation where the official policy itself is unconstitutional, from a circumstance in which the policy at issue is lawful on its face and the municipality has not directly inflicted the injury through its own actions. *Id.* The *Brown* Court held that determining culpability and causation in the latter circumstance, "present[s] much more difficult problems of proof." *Id.* at 1389. The Court determined, in these situations where the policy itself is not unlawful, *Monell* dictates "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Under 42 U.S.C. § 1983 "local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under §1983 for their employees' actions." *Connick v.*

*Thompson,* 131 S.Ct. 1350, 1359 (2011)(quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986). Promulgation or adoption of the municipal policy in question must be said to have "cause[d] one of its employees to violate the plaintiff's constitutional rights" in order for municipal liability to apply. *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014)(quoting *Monell*, 436 U.S. at 692). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick,* 131 S.Ct. at 1359.

Plaintiff cannot rely on *respondeat superior* liability to hold the county liable under § 1983. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, pursuant to *Monell,* a municipality may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, and (2) when there is an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007). In addition to showing that the policy itself was the moving force behind the deprivation, the Plaintiff must show that the deprivation arose as a result of "deliberate indifference" to her rights. *Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996).

In order to state an actionable municipal liability claim, a plaintiff must adequately allege one of the following four theories of liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of

a custom of tolerance or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *accord Boulton v. Swanson*, 795 F.3d 526, 531 (6th Cir. 2015).

Under the first theory of *Monell* liability pertaining to an illegal official policy, the first inquiry must be whether there is a direct causal link between the alleged municipal policy or custom and the alleged constitutional deprivation. *Doe v. Patton*, 381 F.Supp.2d 595, 599 (E.D.Ky.2005), aff'd sub nom. *Doe v. Magoffin Cty. Fiscal Court*, 174 Fed.Appx. 962 (6th Cir.2006). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, at 403-404, 117 S.Ct. 1382. In order to impose municipal liability, a plaintiff bringing a § 1983 action against a municipality must identify the policy or custom that caused her injury. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

Although a § 1983 plaintiff might not be able to demonstrate that a written policy exists, he or she "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. (citation and quotation marks omitted); *Doe v. Patton*, 381 F.Supp.2d 595, 600 (E.D.Ky.2005), aff'd sub nom. *Doe v. Magoffin Cty. Fiscal Court*, 174 Fed.Appx. 962 (6th Cir.2006). A 'custom' for purposes of § 1983 liability must be so permanent and well settled as to constitute a custom or usage with the force of law. *Doe v. Magoffin Cty. Fiscal Court*, 174 Fed.Appx. 962 (6th Cir.2006). Not only must the Plaintiff show that the County caused the constitutional violation, but she "must also show a direct causal link between the custom and the constitutional deprivation." *Id.* at 508. "This requirement is necessary to avoid de facto

14

*respondeat superior* liability prohibited by *Monell*. *Cash v. Hamilton County Dept. of Adult Probation,* 388 F.3d 539, 542–43 (6th Cir.2004).

### i. Plaintiff fails to identify an illegal official policy that was the 'moving force' behind Plaintiff's alleged constitutional deprivations

Plaintiff contends that the County Defendants have policies that are not designed to assure that Plaintiff, a detainee at the Jail, would be protected from "violent and savage conduct." Doc. No. 2, PID 12, at ¶ 82. This statement fails to identify an official policy and is too conclusory and vague to make it plausible on its face that a policy was the moving force behind the deprivation alleged in this lawsuit. This is precisely the type of situation in which the Supreme Court has mandated that "rigorous standards of culpability and causation apply," to prevent *Monell* liability from collapsing into *respondeat-superior* liability. *See Brown,* at 117 S.Ct. at 1389; *Monell v. Department of Social Services of New York,* 436 U.S. 658, 691 (1978)("a municipality cannot be held liable solely because it employs a tortfeasor").  Plaintiff fails to carry her burden at the pleading stage of setting forth sufficient facts to support a direct causal link between an official policy and the alleged constitutional deprivation. Plaintiff does not and cannot establish with requisite particularity a policy, custom or practice that directly caused the alleged sexual assault or rape.

When faced with a similar question of whether an officer's act of rape or sexual assault can be considered an official policy or custom of a county, courts have declined to accept the possibility that rape or sexual assault can be an official policy as a matter of law. In *Wooten v. Logan,* the Sixth Circuit upheld a decision by the district court granting summary judgment in favor of the county, holding that the county was not liable under 42 U.S.C. § 1983 for the actions of Sheriff Logan when the Sheriff personally sexually assaulted the Plaintiff. *Wooten v. Logan*, 92 Fed.Appx. 143, 144 (6th Cir.2004). In *Wooten*, Plaintiff Crystal Wooten alleged that Sheriff

Logan stopped the vehicle she was a passenger in with the use of a Sheriff's vehicle and cruiser lights. Id. Sheriff Logan also wore a uniform, badge and gun, when he convinced the Plaintiff to engage in oral and sexual intercourse over a two hour period. *Id.*

Plaintiff Wooten asserted § 1983 and § 1985 actions, assault and battery claims, outrageous conduct and false imprisonment. *Id.* at 145. The district court entered summary judgment on behalf of the county finding the county could not be held liable for Sheriff Logan's actions. *Id.* The district court noted that municipalities may be liable under § 1983 for the actions of an official, if the official possesses final authority to establish municipal policy with respect to the action ordered; *however, Sheriff Logan's alleged criminal conduct "did not establish or constitute 'a municipal policy.'" Id.* (emphasis added).

The Sixth Circuit Court of Appeals, in affirming the district court's decision granting summary judgment to the county, held that the lower court properly entered judgment in favor of the municipality because the Plaintiff did not demonstrate that the Sheriff's conduct represented the "official policy" of the county, as required for the county to incur *Monell* liability under § 1983. *Id.* The Sixth Circuit Court of Appeals relied upon the holding in *Pembaur v. City of Cincinnati,* finding that the "official policy" requirement was intended to distinguish "the acts of the municipality from the acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Id.* at 145-46; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80, 106 S.Ct, 1292, 89 L.Ed.2d 452 (1986).

The Sixth Circuit in *Wooten* went on to declare, "[u]nder appropriate circumstances, a single act by a local government official can constitute the government's 'official policy.' Specifically, an act represents 'official policy,' and liability under § 1983 attaches, where the

official 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Wooten v. Logan*, 92 Fed.Appx. 143, 146 (6th Cir.2004). The Sixth Circuit concluded that the district court properly held that although Sheriff Logan was in fact the "final policymaker with regard to enforcement of the law," the Sheriff's act of rape "did not establish or constitute a 'municipal policy.'" *Id.* The district court held and the Sixth Circuit concurred, that Sheriff Logan's conduct, the sexual assault of the Plaintiff, "was not 'designed to guide future decision making or in furtherance of some governmental body's high-level overall plan.'" *Id.* The Sixth Circuit concluded, finding liability on the part of the municipality in such circumstances "would contravene *Pembaur's* attempt to 'distinguish acts of the *municipality* from acts of *employees* of the municipality' and would institute the doctrine of *respondeat superior. Id.* at 146-47. Accordingly, Logan's conduct cannot represent 'official policy,' and the County is not liable for Logan's conduct." *Id.* at 147.

A similar fact pattern and causes of action were considered in *Doe v. Patton* by the Eastern Division, District Court of Kentucky. *Doe v. Patton*, 381 F.Supp.2d 595, 597 (E.D.Ky.2005). The district court in *Doe v. Patton,* citing to the *Wooten* decision, held that "Patton's alleged act of rape cannot be considered a 'policy or custom' of the county. Thus, the official capacity claims against him must be dismissed. […] Doe also has not offered any evidence or otherwise demonstrated that Patton was responsible for setting county policy." *Id.* at 599.

Like in *Wooten* and *Patton,* the Plaintiff cannot demonstrate that an alleged sexual assault perpetuated on an inmate by a corrections officer represented the official policy of the county. Defendant Villella was a corrections officer at the time of the alleged incident and cannot be reasonably said to have been the final policymaker. As such, the Plaintiff cannot argue, as a

17

matter of law, that this is one of the circumstances in which a single act by a local government official can constitute the government's official policy. Also, as in the case of *Wooten,* it cannot be reasoned that Defendant Villella's alleged actions of sexual assault and rape were "designed to guide future decision making or in furtherance of some governmental body's high-level overall plan." *See Id.* at 146. Finding Defendant Villella's conduct constituted an official policy or was done pursuant to an official policy would be in contravention of both *Monell* and *Pembaur,* impermissibly collapsing *Monell* liability into *respondeat superior* liability.

> **ii. A *Monell* ratification theory does not abrogate the requirement that a policy be the moving force behind the constitutional harms**

Branch Five of Plaintiff's Complaint makes a brief, conclusory allegation of ratification. *See* Doc. No. 1, PID 13, at ¶ 85. Plaintiff asserts "Defendants, by and through the position of knowledge, activities, and ratification of the person or persons having supervisory responsibility over said case implemented, promulgated, adopted, ratified, and acquiesced in the deliberate indifference to the serious needs of the Plaintiff […]." *Id.* Plaintiff does not set forth any facts to support her conclusory allegation that ratification occurred in the instant matter.

"When a subordinate's decision is subject to review by the municipality's authorized policymakers, the [policymakers] have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988)(emphasis in original). Significantly, ratification does not abrogate the requirement of *Monell* that the municipality's policy must be "the moving force of the constitutional violation." *Monell,* 436 U.S. at 695. Additionally, post-injury ratifications of conduct are not actionable, because

"[w]rongful conduct after an injury cannot be the proximate cause of the same injury." *Tompkins v. Frost,* 655 F.Supp. 468, 472 (E.D. Mich. 1987).

In the instant matter, Plaintiff has not contended nor set forth any facts indicating that the incident in question failed to receive an adequate investigation or that proper discipline was not levied against Defendant Villella. Defendant Villella received his immediate probationary release from employment, a criminal investigation was immediately initiated and criminal prosecution is ongoing against Defendant Villella by the Montgomery County Prosecutor's Office. *See* Montgomery County Court of Common Pleas, Case No. 2018 CR 04699, *State of Ohio v. Franco R. Villella*. Even if Plaintiff did allege a failure to properly investigate or discipline Defendant Villella, this would amount to post-injury ratification of conduct, which is not actionable as a matter of law.

A ratification argument fails as a matter of law as there is no official policy which can be fairly attributed to the particular constitutional deprivation alleged, a rape and sexual assault. Plaintiff is required under *Monell* to establish causation, setting forth facts demonstrating that any post-injury actions were the "moving force" behind Villella's actions. *Monell,* 436 U.S. at 695; *McGee v. Madison Cty., Tennessee*, 2017 WL 6804233, *8 (Oct. 31, 2017). Plaintiff has not contended that any ratification of Villella's conduct caused Plaintiff's alleged constitutional deprivation or that the County Defendants ratified any unlawful conduct of Villella prior to the incident alleged.

### iii. Plaintiff has not identified a pattern of sufficiently similar unconstitutional conduct to state a *Monell* claim.

Plaintiff points to a number of lawsuits filed against the Montgomery County Defendants, none of which involve similar facts or allegations as those made in this lawsuit. Doc. No. 1, PID 5, at ¶ 29. Plaintiff lays out the allegations made in each of these cases briefly and none of them

are sufficiently similar to the instant matter, as none involve allegations of rape or sexual assault. *Id.* The prior incidents alleged as constituting a pattern of unconstitutional conduct must be sufficiently similar to the incident alleged in the Complaint. As held in *Connick,* "[w]ithout notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). The prior occurrences suggested by the Plaintiff as demonstrating a pattern of unconstitutional conduct have varying fact patterns and causes of action at issue, but none are sufficiently similar to the alleged incident in Plaintiff's Complaint.  Further, Plaintiff has not set forth facts showing that any of these other lawsuits have resulted in findings of constitutional violations or liability.

### iv.  No specific training is necessary to inform officers not to rape or sexually assault individuals in their custody.

Branch Six of Plaintiff's Complaint advances a claim of *Monell* liability under a theory of failure to train and supervise. *See* Doc. No. 1, PID 13, at ¶¶ 89-95. Plaintiff contends, as a direct and proximate result of Defendants' failure to properly train, supervise, or discipline the officers involved in the attack on Plaintiff, Plaintiff suffered serve physical and emotional injuries. *Id.* at ¶ 92. A claim for failure to supervise or train is dependent upon proof that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the entity's use of force or deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Plaintiff's use of phrases such as "failure to train," and "failure to supervise" is meaningless without any factual allegations. *Johnson v. Gannon*, No. 3:09–0551, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010) (internal citation omitted).

To plead a § 1983 failure to train or supervise claim sufficient to withstand *Iqbal* and *Twombly,* a plaintiff is required to plead more facts than those that constitute the alleged underlying constitutional violation. One isolated incident cannot be the basis for a pattern or policy claim. *Thomas*, 398 F.3d at 430–31. In order to state a plausible "failure to train" § 1983 claim, plaintiff must plead facts regarding the nature of the training and supervision provided to the officials, and must plead facts demonstrating deliberate indifference, such as a pattern of similar constitutional violations. See e.g., *Royles v. Springfield Twp. Ohio*, S.D. Ohio No. 1:06–CV–376, 2009 WL 483826, *6 (Feb. 25, 2009) (citing to *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989) (O'Conner, J., concurring)); *See e.g., Hill v. City of Cincinnati*, S.D. Ohio No. 1:09–cv–800, 2010 WL 3257725, at *5 (July 16, 2010) (dismissing claim against the city where the plaintiff pleaded "only facts [that] ... relate to her individual circumstances"), report and recommendation adopted by, 2010 WL 3257727 (S.D. Ohio Aug.17, 2010); *Scrap Yard, LLC v. City of Cleveland*, N.D. Ohio No. 1:10 CV 2465, 2011 WL 3900571, at *4 (Sept. 6, 2011) (dismissing claims that were "founded on 'a single set of allegedly wrongful acts'" rather than on "violations [that] occurred pursuant to the City of Cleveland's policy or custom").

In *City of Canton v. Harris,* the United States Supreme Court held, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Russo v. City of Cincinnati* the Sixth Circuit, in relying upon *City of Canton v. Harris,* held that "to establish liability under *City of Canton,* the plaintiff must prove [...] that the training program at issue is inadequate to the tasks that officers

21

must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992). It is not enough for a plaintiff "to show that his injury could have been avoided if the officer had more or better training." *Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999).

Plaintiff's *Monell* claim advanced pursuant to a theory of failure to train and supervise fails as a matter of law. Federal Courts have routinely found that there is no need to specifically train law enforcement officers not to rape, commit sexual assault or engage in other conduct that is criminal. When considering whether the existence of training on the illegality of rape or sexual assault was necessary for law enforcement officers, the Eighth Circuit concluded "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women." *Andrews v. Fowler,* 98 F.3d 1069, 1077 (8th Cir. 1996). Relying on the *Andrews* decision and others, the Eastern District of Tennessee held in *Campbell v. Anderson County*, "[r]efraining from raping women in police custody is so obvious that even if Anderson County were silent about such conduct, it would not give rise to a constitutional violation" and that "no specific training [i]s necessary to inform officers not to rape or sexually assault women in their custody." *Campbell v. Anderson County,* 695 F.Supp. 2d 764, 774 (E.D. Tenn. 2010); *See also Doe #1 v. Cravens,* 2018 WL 1522401, *2 (Mar. 28, 2018).

The Court in *Campbell* declared, "[f]ederal courts addressing such claims have uniformly held that a single act of sexual misconduct by a police officer cannot form the basis of municipal liability under a failure to train theory. The court must apply 'rigorous standards of culpability and causation' to justify liability on the defendant municipal entity." *Campbell v. Anderson Cty.*,

695 F.Supp.2d 764, 774 (E.D.Tenn.2010). The Court went on to state, "In addition, courts presented with similar complaints of sexual assault have uniformly found that training or its absence does not cause the plaintiff's injuries." *Id.* The *Campbell* Court cited to the holding of a Tenth Circuit case in *Barney v. Pulsipher,* declaring, "we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Id.*; *See Barney v. Pulsipher,* 143 F.3d 1299, 1308 (10th Cir. 1998); *See also Williams v. Bd. of County Comm'rs of United Govt. of Wyandotte Cty.,* 2000 WL 1375267 (D.Kan. Aug. 30, 2000)(cited with approval in *Oliver v. City of Berkley,* 261 F.Supp.2d 870 (E.D. Mich.2003)); *Lewis v. Pugh,* 2007 WL 1394145 (E.D. Tex. May 11, 2007), *aff'd,* 289 Fed.Appx. 767 (5th Cir. 2008)("Indeed, it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate."); *Breland v. City of Centerville, Ga.,* 2008 WL 2233595 (M.D. Ga. May 28, 2008)("No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, *without training,* that they are not allowed to take sexual advantage of their prisoners.")(emphasis added).

Although both *Andrews* and *Campbell* were decided in the context of a Motion for Summary Judgment and not a Motion to Dismiss, the underlying rationale is equally applicable at the Motion to Dismiss stage. *See Doe #1 v. Cravens,* 2018 WL 1522401, *2 (Mar. 28, 2018). In fact, the federal court in *Doe #1 v. Cravens,* in considering both *Andrews* and *Campbell*, held "[e]ven though both [those] cases were decided in the context for a motion for summary judgment and not on a motion to dismiss, the Court agrees with their underlying rationale." *Id.*

23

Plaintiff has failed to state a claim for *Monell* liability under a failure to train theory, as no training is necessary to inform a law enforcement officer that rape is impermissible.

> ### v. Plaintiff fails to state a *Monell* claim under a failure to supervise theory, as sexual assault is not a plainly obvious consequence of a lack of supervision and Defendant Villella was not a known risk.

Lastly, a failure to supervise theory of *Monell* liability also fails to state a claim as a matter of law and must be dismissed. In order to impose liability under this theory of *Monell*, "the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be plainly obvious." *Gregory v. City of Louisville,* 444 F.3d 725, 752 (6th Cir. 2006); *Campbell v. Anderson Cty.*, 695 F.Supp.2d 764, 775 (E.D.Tenn.2010). The Court in *Campbell* considered liability under a failure to supervise theory of *Monell* and determined "[t]he link between the County's alleged lack of supervision and Campbell's alleged rape is too tenuous [...]." *Campbell v. Anderson Cty.*, 695 F.Supp.2d 764, 775 (E.D.Tenn.2010). The Court further stated, being able to prove opportunity is not the same thing as being able to prove that the County's lack of supervision was a "moving force" behind the deprivation of Plaintiff's rights and arose as a result of "deliberate indifference" to those rights. *Id.*

The *Campbell* Court went on to state, "The Supreme Court has specifically cautioned against imposing municipal liability in such cases." *Id.; See City of Canton,* 489 U.S. at 391, 109 S.Ct. 1197. ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.") The *Campbell* Court concluded, "[i]n this case, in order to allow Campbell's argument to proceed to trial, the court must accept as a viable legal theory that anytime a police officer is left unsupervised it is 'plainly obvious' that a rape could occur. The court rejects such an argument." *Campbell v. Anderson*

*Cty.*, 695 F.Supp.2d 764, 775 (E.D.Tenn.2010). The Court, in reaching this decision, relied upon a Western District of Virginia case of *Doe v. Cunningham,* which is persuasive in the instant matter, holding:

> The court finds a policy or custom of transporting female inmates alone with male guards is not unconstitutional, because the majority of men, and the majority of prison guards, are not rapists merely waiting for an opportunity to assault a woman. […] But absent a showing that transportation by a male guard alone is tantamount to a sentence of rape for any woman unfortunate enough to suffer it, the policy cannot be said to have caused the rape. Rather, the policy failed to prevent the rape, which is inadequate as a matter of law to support liability.

*Doe v. Cunningham,* 2006 WL 2819600, at *2 (W.D.Va. Sept. 28, 2006).

As in *Campbell,* the Plaintiff in this matter cannot show the plainly obvious consequence of a failure to supervise a male officer who is alone with a female inmate is the sexual assault of the inmate.  Further, Plaintiff does not contend that Defendant Villella had a history of sexual misconduct or any other problematic behavior that would have put the County Defendants on notice that "the risk of a constitutional violation arising as a result of the [County's] failure to supervise [the Plaintiff] was 'plainly obvious.'" *Id.*

Lastly, the Plaintiff has not plead with requisite particularity that the County "authorized, approved or knowingly acquiesced" in Defendant Villella's alleged sexual assault. As the Sixth Circuit has held, "the failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ku.,* 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff has failed to meet this minimum burden in her pleadings and her *Monell* claim must be dismissed.

**F. County Defendants are entitled to statutory immunity pursuant to Ohio Revised Code 2744 from Plaintiff's state law claims of breach of duty of care and intentional infliction of emotional distress.**

Count Two of Plaintiff's Complaint contends that Sheriff Streck in his individual capacity and the Montgomery County Board of County Commissioners in their official capacity acted negligently, maliciously, recklessly and willfully breached a duty of care owed to the Plaintiff. Doc. No. 1, PID 14, at ¶¶ 96-104. Count Five of Plaintiff's Complaint alleges intentional infliction of emotional distress under Ohio law. *Id.* at ¶¶ 117-120. Plaintiff does not set forth sufficient facts to establish an exception to statutory immunity for the County Defendants in their individual or official capacities as to either of these state law claims.

### i. The Montgomery County Board of County Commissioners is immune from liability in its official capacity

The determination of whether immunity is available is a question of law that is properly decided by the court before trial. *Carpenter v. Scherer-Mountain Ins. Agency* (1999), 135 Ohio App.3d 316, 330, 733 N.E.2d 1196. A three-tiered analysis is involved in determining whether a political subdivision is immune from liability under Ohio law. *Range v. Douglas*, 763 F.3d 573, 582-83 (6th Cir. 2014). First, the court must determine if the political subdivision qualifies for the general grant of immunity under Ohio Rev. Code § 2744.02. The general rule of immunity provides a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. Ohio Rev. Code § 2744.02(A)(1). Sheriffs and corrections officers are employees of the county, which is a political subdivision of the state. *Sanford v. Cty. Of Lucas*, No. 3:07 CV 3588, 2009 WL 723227, at *8 (N.D. Ohio, Mar. 16, 2009). The second step in the analysis is to determine if any of the enumerated exceptions to immunity apply and thus remove the established general

26

grant of immunity. *See* Ohio Rev. Code § 2744.02(B)(1)-(5). Lastly, if an exception applies, the court must assess whether any of the defenses to liability listed in Ohio Rev. Code § 2744.03 apply. If a defense applies, immunity is to be reinstated.

Plaintiff fails to allege any facts against the County Defendants, as it pertains to either of her state law claims of intentional infliction of emotional distress or breach of duty of care, that overcome the general grant of immunity afforded political subdivisions in Ohio Rev. Code § 2744.02. The Sheriff Defendants qualify for the grant of immunity as a political subdivision or an employee of a political subdivision in connection with a governmental function. *See* Ohio Rev. Code § 2744.01(C)(2)(a) (provision or nonprovision of police services is a governmental function). None of the five exceptions enumerated in Ohio Rev. Code § 2744.02(B)(1)-(5) apply to remove this general grant of immunity from the Montgomery County Board of County Commissioners in its official capacity. Accordingly, a grant of immunity is afforded and a dismissal of this claim against the political subdivision is necessary.

### ii. Sheriff Streck is immune from Plaintiff's state law claims in his individual capacity.

Sheriff Streck is entitled to statutory immunity in his individual capacity from Plaintiff's state law claims, intentional infliction of emotional distress and breach of duty, pursuant to Ohio Revised Code 2744.03(A)(6). An individual employee of a political subdivision "is immune from liability in performing his job unless: (1) his acts or omissions are manifestly outside the scope of his employment; (2) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed upon the employee by another statute." *Tracy v. Tinnerman*, No. 2003–CA–21, 2003 WL 22927758, at \*2 (Oh. Ct. App., Dec. 12, 2003) (citing Ohio Rev. Code § 2744.03(A)(6)).

Reckless conduct is characterized by the conscious disregard or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Anderson v. Massillon*, 983 N.E.2d 266, 267 (Ohio 2012). A police officer is not personally liable for mere negligence, but only for actions that fall into one of the above statutory exceptions to immunity. *Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 34-35 (Ohio 1994). As to reckless conduct, Plaintiff sets forth no facts to support the conclusory allegation that Sheriff Streck acted in conscious disregard or indifference to a known or obvious risk of harm to the Plaintiff. Plaintiff does not contend that Defendant Villella had a history of unlawful conduct or sexual abuse that would have put the County Defendants on notice of any risk of obvious harm. Plaintiff does not and cannot contend that Sheriff Streck acted manifestly outside the scope of his employment and liability is not expressly imposed upon the Sheriff by another statute.

"Malice" has been defined as the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 453-54, 602 N.E.2d 363. "Wanton" misconduct is the failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 353, 639 N.E.2d 31, 1994-Ohio-368. Plaintiff sets forth no facts to make it plausible that Sheriff Streck acted with malice, wantonly or willfully. Accordingly, Plaintiff fails to allege sufficient facts to remove the grant of immunity afforded to Sheriff Streck in his individual capacity under Ohio law and this claim must be dismissed.

It is well-established that an intentional infliction of emotion distress claim does not trigger the immunity exception contained in R.C. 2744.02(B)(4). See *Hubbard v. Canton City*

*School Bd. of Edn*. 97 Ohio St.3d 451, 780 N.eE.2d 543 (2002). Since there are no exceptions to immunity for intentional torts such as intentional infliction of emotion distress claims, Plaintiff's claim must be dismissed.

### iii. Defendant Sheriff Streck is entitled to statutory immunity under Ohio Rev. Code § 311.05.

In addition to Sheriff Streck's immunity to Plaintiff's state law claims under Ohio Rev. Code Chapter 2744, Sheriff Streck is also immune to such claims under Ohio Rev. Code § 311.05.  Ohio Rev. Code § 311.05 provides "the sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." Plaintiff makes no such allegations regarding Sheriff Streck. As to ratification, negligence or inaction alone is insufficient to show ratification of an agent's unauthorized act. *Morr v. Crouch*, 249 N.E.2d 780, 784 (Ohio 1989). Ratification must follow knowledge of the facts. *Id.* Plaintiff provides no facts that would strip Sheriff Streck of immunity afforded pursuant to Ohio Rev. Code § 311.05.

## V.    CONCLUSION

For all of the aforementioned reasons, the Montgomery County Defendants respectfully request the dismissal of Plaintiff's claims.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: /s/Benjamin A. Mazer
Benjamin A. Mazer (0087756)
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 West Third Street, P.O. Box 972
Dayton, Ohio 45422

29

Telephone: (937) 496-7176
Fax Number: (937) 225-4822
E-mail:mazerb@mcohio.org

and

By:/s/Anne M Jagielski
Anne M. Jagielski (0093047)
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 W. Third Street
P.O. Box 972
Dayton, OH 45422
Telephone: (937) 496-7195
E-mail: jagielskia@mcohio.org

Attorneys for Defendants Montgomery
County Board of County Commissioners
and Sheriff Rob Streck

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties in this case registered with the CM/ECF system, or, if they are not registered users, by mailing a copy via certified United States mail.

By: /s/Benjamin A. Mazer
Benjamin A. Mazer

30