**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JENNIFER MYERS** | : | Case No.: 3:18-CV-00409 |
| Plaintiff, | : | Judge Thomas Rose |
| vs. | : | |
| **MONTGOMERY COUNTY BOARD OF COMMISIONERS, et al.** | : | PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) |
| | : | |
| Defendants. | : | |

Now comes Plaintiff, Jennifer Myers, and files her Response to Defendants', Montgomery County Board of Commissioners ("Montgomery County") and Montgomery County Sheriff Rob Streck's Motion to Dismiss for failure to state a claim upon which relief can be granted. Ms. Myers adequately states a claim for relief under § 1983 against Montgomery County for failure to supervise and discipline the Montgomery County Jail corrections officers and failing to provide adequate medical care. Additionally, Ms. Myers adequately states a claim for relief under § 1983 against former Montgomery County Sheriff Phil Plummer in his individual capacity for failure to train, supervise, and discipline Defendant Villella, failure to provide adequate medical treatment, and failure to prevent harm of inmates. Thus, Defendants' motion should be denied. The reasons supporting this response are set forth more fully in the attached memorandum.

Respectfully submitted,

**DYER, GAROFALO, MANN & SCHULTZ**

/s/ Kenneth J. Ignozzi
Kenneth J. Ignozzi (0055431)
Attorney for Plaintiff
Dyer, Garofalo, Mann, & Schultz
131 N. Ludlow Street, Suite 1400
Dayton, OH 45402
Tel:  (937) 223-8888; Fax:  (937) 824-8630
Email: kignozzi@dgmslaw.com

1

**MEMORANDUM IN OPPOSITION**

**INTRODUCTION AND PROCEDURAL HISTORY**

On December 18, 2018, Jennifer Myers filed a lawsuit against Defendants Montgomery County Board of Commissioners ("Montgomery County"), Montgomery County Sheriff Phil Plummer ("Sheriff Plummer")[1], and former Corrections Officer Franco Villella ("Villella"). Doc. No. 1. The Complaint sets forth claims against the Defendants arising out of Ms. Myers' assault and rape by Villella while an inmate in the Montgomery County Jail. *Id.* The Montgomery County is named in its official capacity. *Id.* Sheriff Plummer is named in his individual and official capacities.[2] Montgomery County and the current Montgomery County Sheriff Rob Streck have now filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P 12(b)(6). Doc. No. 12.  Ms. Myers is filing this response to Defendants' Motion to Dismiss.

**STATEMENT OF FACTS**

In December of 2018, Villella was a corrections officer for the Montgomery County Jail. Plaintiff's Complaint at ¶ 6. Villella was employed by Montgomery County and had been hired and was supervised by Sheriff Plummer, who was a policy maker on behalf of Montgomery County with respect to customs, practices, policies, and procedures at the jail. *Id.* at ¶ 5,7.

In the months prior, Villella stalked Ms. Myers, an inmate, while he was on duty. *Id.* ¶ 18. On multiple occasions, Villella used his keys to enter Ms. Myers' cell without permission and without a female corrections officer with him, even though he was not supposed to be working on her floor. *Id.* Further in the past, Villella had engaged in a pattern of violence, and

---

[1] While Phil Plummer is no longer the Montgomery County Sheriff, Phil Plummer is a named Defendant to this lawsuit. At all times relevant to this action, Phil Plummer was the policy maker with respect to customs, practices, policies and procedures at the Montgomery County Jail. Phil Plummer did not resign until after Plaintiff's assault.
[2] The current Montgomery County Sheriff is Rob Streck.

excessive force. *Id.* at ¶ 83. Since filing the Complaint, Ms. Myers has received a copy of Villella's Performance Evaluation Report created by Montgomery County Sheriff's Office.[3] Approximately a month prior to the assault and rape of Ms. Myers, Villella received a negative mark on his Performance Record at the Montgomery County Jail recording such prior incidents. Villella's Performance Record reflects he failed to roll gates and housed an inmate in the wrong location. Additionally, approximately two days prior to the incident, on or about December 9, 2018, Villella removed Ms. Myers and another inmate from their cells and took them to a secluded dark dorm area in the West 21 section of the jail and made inappropriate comments to Ms. Myers before returning her to her cell. *Id.* at ¶ 19.

On December 11, 2018, Villella ordered Ms. Myers and her cellmate to leave their cell in the East T2 section of the jail and go with him to the secluded dark dorm area in the West 21 section of the jail. *Id.* at ¶ 10. Villella took the inmates to this area for them to clean the area where he had permitted conduct of other inmates against his supervisor's orders. *Id.* Afterwards, Villella returned the inmates to their respective cells. *Id.* Approximately fifteen minutes later, Villella returned, used his keys to open Myers' cell door, and ordered her to come with him. *Id.* at ¶ 11. Villella returned Ms. Myers to the secluded area and assaulted and raped her at the jail. *Id.* at ¶¶11-12. Villella caused physical and emotional injuries by violating Ms. Myers' body and her personal dignity. *Id.* Ms. Myers immediately reported the incident to officers of the Montgomery County Jail. *Id.* at ¶ 14.

Notwithstanding the fact that Ms. Myers was subjected to arguably the worst type of physical and emotional harm a person can experience—rape—Ms. Myers was also denied immediate medical treatment. *Id.* at ¶ 13. Instead, after Ms. Myers immediately reported the

---

[3] If these additional facts are necessary to set forth a claim alleged in the Complaint, Plaintiffs would seek leave in the alternative to amend the complaint to plead these facts which have been discovered.

incident, Montgomery County Jail corrections officers placed Ms. Myers in a cold cell for hours. *Id*. at ¶ 15. Additionally, Ms. Myers was further degraded by other corrections officers, when she was forced to remove all of her clothes and undergarments with male officers watching. *Id.* Ms. Myers was finally transported to the hospital for medical treatment of her injuries. *Id.*

The events of December 11, 2018 were not an isolated incident. Multiple lawsuits have been filed against Montgomery County for excessive force due to the lack of supervision and discipline of the Montgomery County Jail corrections officers. *Id.* at ¶29. The Montgomery County Jail corrections officers had a pattern of using excessive force against inmates and the custom of Sheriff Plummer's failure to supervise the corrections officers at the jail caused this conduct. *Id.* Sheriff Plummer resigned from his position after the filing of this Complaint.

## STANDARD OF REVIEW

Federal courts may reject fact-based claims at the pleading stage only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief. *Buchanan v. Northland*, 776 F.3d 393 (6th Cir. 2015). Under Rule 12(b)(6), a Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level." *Tackett v. M& G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007). A claim has facial plausibility when the pleaded factual content

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## ARGUMENT

### I. **Defendants Montgomery County And Sheriff Plummer Are Liable For Villella's Use Of Excessive Force Against Myers.**

A plaintiff can bring a claim under § 1983 when she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983; *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 505-506 (6th Cir. 1996). "A municipal liability claim [and a supervisory liability claim] against the [municipality and its supervising officials] must be examined by applying a two-pronged inquiry: (1) [w]hether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) [w]hether the [municipality and its supervising officials] [are] responsible for that violation." *Id.* at 505-506.

First, Ms. Myers sets forth sufficient facts that Villella violated her constitutional rights under the 8th Amendment. Second, Ms. Myers provides sufficient facts that Montgomery County is responsible, under a municipal liability theory, through Sheriff Plummer's failure to supervise and discipline its jail corrections officers. Moreover, Sheriff Plummer is responsible, under a supervisory liability theory, for such violations through his failure to train, supervise, and discipline Villella. Therefore, Ms. Myers adequately states a §1983 claim against Sheriff Plummer and Montgomery County. Thus, Defendants' Motion to Dismiss should be denied.

### A. **Villella Violated Ms. Myer's Constitutional Right To Be Free From Excessive Force.**

Under familiar principles, government officials, such as Defendant Villella, are shielded from liability for damages under § 1983 "insofar as their conduct does not violate clearly

5

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law." *Peatross v. City of Memphis*, 818 F.3d 233, 239 (6th Cir. 2016). First, Ms. Myers sets forth sufficient facts that (1) Villella violated her Eighth Amendment right to be free from cruel and unusual punishment through his use of excessive force and (2) violated her 14th Amendment substantive due process right to bodily integrity when he raped and sexually assaulted her.

### 1. Eight Amendment Excessive Force Claim

A "claim of excessive force to subdue convicted prisoner should be analyzed under the Eighth Amendment and its standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).[4] "The language of the Eighth Amendment, '[e]xcessive bail shall not be required, … nor cruel and unusual punishments inflicted,' manifests 'an intention to limit the power of those entrusted with the criminal-law function of government.'" *Whitely v. Albers*, 475 U.S. 312 (1986). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment's prohibition of cruel and unusual punishments '[draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Hudson*, *supra* at 8. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9.

---

[4] On the date of the incident at issue herein, Ms. Myers was an inmate at the Montgomery County Jail. Complaint at ¶ 8. Thus, Ms. Myers' excessive force claim is properly analyzed and clearly established under the Eighth Amendment right to be free from cruel and unusual punishment.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* "The extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id.* (quoting *Whitley, supra* at 312).

Ms. Myers sets forth sufficient facts to establish that Villella maliciously and sadistically applied force and such force was not in an effort to maintain or restore discipline. Ms. Myers asserts in her Complaint that Villella's actions were done with the malicious purpose to cause harm. Complaint at ¶ 29. Such assertion is established through Villella's actions. Villella used his keys to open Ms. Myers' cell door, ordered her to come with him, took her to the secluded dark dorm area in the West 21 section of the jail, took her to the last bathroom stall in that area, forced himself upon Ms. Myers, assaulted her, and raped her. *Id.* at ¶ 11-12. Therefore, Ms. Myers adequately states a §1983 claim's requirement that her constitutional rights guaranteed under the Eighth Amendment were violated.

### 2. Fourteenth Amendment Substantive Due Process Bodily Integrity Claim.

Ms. Myers' bodily integrity claim is properly analyzed and clearly established under the 14th Amendment substantive due process right to bodily integrity. "If the 'right to bodily integrity' means anything, it certainly encompasses the right not to be sexually assaulted under color of law." *Doe, supra* at 1349. Thus, "[t]he substantive component of the Due Process Clause protects [citizens] against abusive governmental power." *Id.* "To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood." *Id*. Sexual assault is "so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause." *Id*.

Ms. Myers successfully alleges Villella violated such clearly established right when he raped and sexually assaulted her. Villella forced Ms. Myers to engage in sexual intercourse with him. Complaint at ¶12. Therefore, Ms. Myers provides sufficient facts to allege Villella violated her 14th Amendment substantive due process right to bodily integrity when he raped her.

### B. Montgomery County and Sheriff Plummer Are Responsible For The Violations Of Ms. Myers' Eighth And Fourteenth Amendment Rights.

Ms. Myers adequately states a § 1983 claim against Montgomery County and Sheriff Plummer because she successfully sets forth sufficient facts to plausibly allege that Defendants are responsible for Villella's violations of Ms. Myers' Eighth and 14th Amendment rights through the acts and omissions of Sheriff Plummer in his official capacity. "It is important to note at the outset that a § 1983 *individual*-capacity claim differs from a § 1983 *official*-capacity claim." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). "An official-capacity

claim against a person is essentially a claim against the municipality" ("municipal liability"). *Id.* On the other hand, "an individual-capacity claim seeks to hold an official personally liable for the wrong alleged" ("supervisory liability"). *Id.* Thus, Ms. Myers asserts a municipal liability claim against Montgomery County.

A plaintiff seeking municipal liability under § 1983 must identify a "policy" or "custom" that was the "moving force" behind the injury alleged. See *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). To constitute a "custom" for purposes of a municipal liability claim under § 1983, it must "be so permanent and well settled as to constitute a custom or usage with the force of law'". *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 505-506 (6th Cir. 1996) quoting *Monell, supra,* at 690-691. To state a municipal liability claim for failure to supervise or discipline, a plaintiff must set forth facts to establish: (1) the existence of a clear and persistent pattern of constitutional violations; (2) the municipality had notice or constructive notice; (3) the municipality was deliberately indifferent; and (4) a direct causal link between the custom and the constitutional violation. *See Id.* Ms. Myers provides sufficient facts to plausibly allege Montgomery County's "customs" (i.e. failure to supervise and discipline its corrections officers) were the "moving force" behind the violations of Ms. Myers' constitutional rights through Sheriff Plummer's deliberate indifference.

### 1. Defendants' Urge The Application Of Incorrect Law.

First, Defendants mischaracterize Myers' Complaint allegations and thus, its reliance on *Wooten v. Logan* and *Doe v. Patton* is misplaced. In *Wooten*, the plaintiff brought suit against a sheriff who raped and sexually assaulted her. 92 Fed.Appx. 143, 144 (6th Cir. 2004) The *Wooten* Court held the sheriff's rape did not represent an "official policy" because it was not "designed to guide future decision making or in furtherance of some governmental body's high-level

9

overall plan." *Id.* at 146. Moreover, in *Patton*, the plaintiff brought suit against a janitor who raped and sexually assaulted her. 381 F.Supp.2d 595, (E.D. KY 2005).The *Doe* Court held the janitor's rape did not constitute a policy or custom and the plaintiff did not demonstrate a janitor was an official responsible for setting county policy. *Id.* at 599.

However, Ms. Myers asserts Sheriff Plummer was the official, who possessed final authority to establish a policy or custom of Montgomery County, not Villella, and that Sheriff Plummer's repeated failure to supervise and discipline the Montgomery County Jail corrections officers, including Villella, constitutes a custom of Montgomery County for purposes § 1983. Thus, *Wooten* and *Patton* do not apply here.

Additionally, in its Motion to Dismiss, Montgomery County asserts that Ms. Myers failed to plead in her Complaint sufficient facts to establish that the County "authorized, approved, or knowingly acquiesced" in Villella's rape and sexual assault of Ms. Myers. However, such standard and respective case law applies to a "supervisory liability" theory that applies to county officials in their individual capacity. Ms. Myers asserts only a municipality liability claim against Montgomery County through Sheriff Plummer in his official capacity.

## 2. Myers Sufficiently Pleads A Municipal Liability Claim For Failure To Supervise And Discipline.

Although a § 1983 plaintiff might not be able to demonstrate that a written policy exists, she "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell, supra* at 691. It is well established that a county policymaker's failure to supervise and discipline its subordinates can constitute a "custom" for purposes of § 1983 municipal liability. See *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989);

10

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ*., 103 F.3d 495 (6th Cir. 1996); *Hays v. Jefferson County, Ky*, 668 F.2d 869 (6th Cir. 1982). Thus, Ms. Myers need not prove that an official policy existed, but only that there was a widespread custom of Sheriff Plummer's failure to supervise and discipline the Montgomery County Jail corrections officers.

Ms. Myers successfully sets alleges facts showing a persistent pattern of constitutional violations. Ms. Myers references a number of lawsuits filed against Montgomery County in connection to excessive force claims due to the lack of supervision and discipline of the Montgomery County Jail corrections officers. Complaint at ¶ 29. The Montgomery County Jail corrections officers had a clear and persistent pattern of using excessive force against inmates and the custom of Sheriff Plummer's failure to supervise the corrections officers at the jail caused this conduct. *Id.* The lawsuits against Montgomery County for excessive force of the Montgomery County Jail corrections officers are sufficiently similar to the excessive force used by Villella, which was caused by the custom of Sheriff Plummer's failure to supervise and discipline the corrections officers. These sufficiently similar lawsuits establish Sheriff Plummer and Montgomery County were on notice of the excessive force being used by the corrections officers at the Montgomery County Jail. Additionally, Montgomery County have asked the U.S. Department of Justice to investigate the jail for civil rights violations against individuals who have sued the County due to Sheriff Plummer's failure to take meaningful action to remedy issues and challenges at the Montgomery County Jail. *Id.* at ¶ 30. These allegations demonstrate the existence of a clear and persistent pattern of constitutional violations.

Additionally, the allegations demonstrate deliberate indifference. "'Deliberate indifference' is a stringent standard of fault, requiring proof a municipal actor disregarded a

known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their … program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.*

Ms. Myers sets forth sufficient facts alleging Montgomery County was deliberately indifferent through Sheriff Plummer's actual or constructive notice. Ms. Myers asserts in her complain Villella was stalking Ms. Myers for months prior to the incident. Villella was written up a month before the incident. Thus, Sheriff Plummer was on notice Villella posed a risk of serious harm to the inmates, yet did not discipline Villella. Villella entered Ms. Myers's cell two days prior to the incident. Earlier on the day of the incident, Villella went against a supervisor's instructions and allowed an inmate to get a haircut in the secluded area. Fifteen minutes before the rape, Villella removed Ms. Myers and another inmate to clean up the area. There is dedicated video camera in the secluded dark dorm area in the West 21 section of the jail where the rape occurred. Sheriff Plummer was deliberately indifferent to the risk that a constitutional violation would occur as a result of Sheriff Plummer's failure to supervise Villella.

**C. Sheriff Plummer Is Liable Under A Supervisory Liability Theory Because He Knowingly Acquiesced In Villella's Use of Excessive Force.**

Generally, "the qualified immunity defense bars individual liability where a reasonable official in the defendant's position would not have understood his or her actions violate a person's constitutional rights." *Essex v. County of Livingston*, 158 Fed.Appx. 351, 356 (6th Cir. 2013). However, an official is not entitled to qualified immunity if the plaintiff can establish supervisory liability under § 1983 for failure to train, supervise, and discipline. *See Coley v. Lucas County, Ohio*, 799 F.3d 530, 542 (6th Cir. 2015). To establish supervisory liability under §

1983, it is enough to show that "the official, acting under color of state law, cause the deprivation of a federal right." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1898).

"A supervisor is not liable pursuant to § 1983 for failure to train, [supervise, or discipline an offending officer] unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 790 (6th Cir. 2013) (internal citations and quotations omitted). However, the Sixth Circuit Court of Appeals has consistently "interpreted this standard to mean that 'at a minimum', the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999. While supervisory liability under § 1983 "must be based on active unconstitutional behavior" and "a mere failure to act will not suffice," "'active'" behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation. *Id.*; s*ee also, Campbell, supra* at 790 (holding that a police chief was not entitled to qualified immunity for failure to train and supervise a K-9 unit even though he was not "actively involved in the incidents" at issue). Also, there must be "a causal connection between the defendant's acts and omissions and the alleged constitutional injuries." *Campbell, supra* at 790.

Ms. Myers adequately states sufficient facts to establish supervisory liability against Sheriff Plummer, in his individual capacity, for Villella's excessive force and violation of Ms. Myers' right to bodily integrity based on Sheriff Plummer's failure to train, supervise, and discipline Villella. Defendant Montgomery County and current Sheriff Streck claim Ms. Myers does not allege sufficient facts to show Sheriff Streck's personal involvement. However, Sheriff

13

Streck was not the Sheriff when the alleged conduct occurred and was not named in the Complaint. Instead, it was Sheriff Plummer and his conduct, which caused Ms. Myers' constitutional violations. Former Sheriff Plummer, in his individual capacity, was a named defendant to this lawsuit. Yet, Sheriff Plummer has failed to file a Responsive Pleading to the Court. Thus, while Ms. Myers did not allege Sheriff Streck's involvement in the incident, such assertions are unnecessary to establish a supervisory claim against Sheriff Plummer and hold him personally liable.

## II. Defendants Montgomery County And Sheriff Plummer Are Liable For Ms. Myers' Inadequate Medical Care.

Ms. Myers sets forth sufficient facts to plausibly allege Sheriff Plummer and Montgomery County were deliberately indifferent to Ms. Myers serious medical needs following the rape and sexual assault by Villella. Under the Eighth Amendment, the government has "an obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Thus, "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Id.* "This is true whether the indifference is manifested by prison doctors in their reponse to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Id.* "A constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004).

The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, supra at 834. In cases where a "prisoner's affliction is seemingly minor or non-obvious," "medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore*, supra at 898 citing *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2004).

14

However, in cases where "a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Id.* at 898-900 (internal citations omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Id.* A prison official has a sufficiently culpable state of mind when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [he] ignored that risk." *Id.* at 837.

First, Ms. Myers sets forth sufficient facts to allege the existence of a "sufficiently serious" medical need required under the objective component. Ms. Myers affliction was not "minor or non-obvious." On the contrary, Ms. Myers was subjected to arguably the worst type of physical and emotional harm a person can experience – rape. Thus, Ms. Myers' claim of rape and sexual assault "arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Thus, Ms. Myers need not need present verifying medical evidence to show that, even after receiving the delayed necessary treatment, her medical condition worsened or deteriorated. Even though Ms. Myers is not required to show that the delay worsened, Ms. Myers sets forth sufficient facts to establish that her emotional injuries worsened as a result of the delay. Rather than providing immediate medical care, Defendant's corrections officers placed Ms. Myers in a cold cell with no blanket, mat, or pillow for hours. During those long hours, Ms. Meyers was not offered any sort of comfort after a traumatizing incident, allowing for Ms. Meyers to revel in the physical and emotional pain that

accompanies rape and sexual assault. Additionally, after the mortifying experience of being raped by Villella, Ms. Myers was further degraded by other corrections officers. Ms. Meyers was taken to a room with a window and forced to remove all of her clothes and undergarments with male officers watching through the window. Thus, in addition to providing sufficient facts to show that she actually experienced the need for medical treatment and that the need was not addressed within a reasonable time frame, Ms. Myers also sets forth sufficient facts to allege that her injuries worsened as a result of such delay.

Second, Ms. Myers sets forth sufficient facts to support the Defendants had subjective knowledge of her medical needs. First, Villella had actual knowledge of Ms. Myers need for medical treatment because he was the one that inflicted the injuries. Yet, Corrections Officer Villella never asked for a medical provider to perform an exam or evaluate Ms. Myers for her injuries sustained in the assault and rape. Complaint at ¶ 62. Additionally, Sheriff Plummer had constructive knowledge of her medical needs because she reported the incident immediately to other corrections officers, who thus had actual knowledge. *Id*. at 14. Ms. Myers even represented to the corrections officers that she had forensic evidence from the incident, such as semen, on her clothes and her person. *Id.* at ¶ 14. Yet, after learning or having reason to believe that Ms. Myers had sustained physical and mental injuries from the assault and rape, Ms. Myers was not evaluated by a nurse or physician and Defendants failed to provide Ms. Myers with medical treatment in a timely manner. *Id.* at 64. Only after several hours of being placed in her cell alone and being subjected to further humiliation by other corrections officers, was Ms. Myers finally offered appropriate medical treatment when she was taken to Miami Valley Hospital. *Id.* at ¶ 64.

**III. Sheriff Plummer Is Liable For His Failure To Prevent Harm In Violation Of Ms. Myers' Constitutional Rights Under The 8th Amendment.**

Prison officials have a duty to "take reasonable measures to guarantee the safety of ... inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To establish a failure-to-protect claim, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of serious harm." *Pullen v. Maynard*, 2017 WL 10671148 at *2 (6th Cir. 2017) citing *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference has an objective and a subjective component. Id. The objective component requires an inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm," while the subjective component requires an inmate to show that a defendant knew that the inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 834, 847.

    A. **Substantial Risk of Serious Harm**

. In order to qualify as substantial, the risk must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The fact that a serious harm occurred is evidence that an inmate was exposed to conditions that pose a substantial risk. *Curry*, 249 F.3d at 506. In applying this rule from *Curry*, "the fact that plaintiff was actually raped is sufficient to demonstrate that he was exposed to a substantial risk of serious harm." *McCracken v. Haas*, 324 F.Supp.3d 939, 946 (E.D. Mich. 2018) citing *Curry*, 249 F.3d at 506.

In this case, the fact that Villella actually raped and sexually assaulted Ms. Myers is sufficient to demonstrate she was exposed to a substantial risk of harm. Moreover, Villella removed Ms. Myers from her cell and took her to West 21 subjecting her to the dangers of being in a dark, vacant area, where corrections officers evidently had unbridled access and permission

to take inmates. From the moment Villella began to stalk Ms. Myers to forcefully raping her, he engaged in a pattern of conduct that epitomizes a substantial risk of serious harm. Therefore, Ms. Myers clearly recounts facts that show the substantial risk of serious harm posed to her.

### B. Deliberate Indifference

"'Actual knowledge' does not require that a prison official know a prisoner would, with certainty, be harmed, or that a particular prisoner would be harmed in a certain way." *Curry, supra* at 507. "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer, supra* at 842. "Nor may a prison official escape liability of deliberate indifferent by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific [corrections officer] who eventually committed the assault." *Id.* Also, "to prove that the supervisors actually knew that the [corrections officer] presented a substantial risk of harm to inmates, the plaintiffs need not prove that [corrections officer] was found to have used excessive force on another inmate" nor "that prison officials thereafter left the [corrections officer] free to assault inmates." *Id.* Instead, "plaintiffs only need to show that the supervisory defendants were aware that [corrections officer] posed a substantial injury to the inmates and were deliberately indifferent to that risk." *Id.*

In *Curry v. Scott*, the Sixth Circuit Court of Appeals held that a reasonable jury could conclude that the prison official was deliberately indifferent because "plaintiffs offered proof of corrections officer's troubling employment record, the internal memorandum putting the corrections officer's supervisors on notice of the implications of his history, and the sworn

18

statements of the corrections officer's co-workers and other supervisors regarding his conduct and attitude." *Curry, supra* at 508.

Ms. Myers sets forth sufficient facts to show that Sheriff Plummer had actual knowledge of the risk of serious harm, yet was deliberately indifferent by failing to take reasonable measures to prevent injury to inmates, such as Ms. Myers. Villella was stalking Ms. Myers for months prior to the incident. Also, Villella was written up a month before the incident. Thus, Sheriff Plummer was on notice that Villella posed a risk of serious harm to the inmates, yet did not discipline Villella or require some sort of supervision. Instead, Villella was able to enter Ms. Myers' cell two days prior to the incident and on the day of the rape.

Also, earlier in the day of the incident, Villella allowed an inmate to get her hair cut in the same secluded area that the rape eventually occurred. Additionally, fifteen minutes before the rape, Villella removed Ms. Myers and another inmate to clean up the hair in the same area. Also, there is a dedicated video camera in the secluded dark dorm area in the West 21 section of the jail where the rape occurred. Thus, not only did Sheriff Plummer know Villella posed a substantial risk of serious harm to Ms. Myers, but Sheriff Plummer also knew the secluded dark dorm area in the West 21 section of the jail posed a risk of serious harm to the inmates. Yet, Sheriff Plummer did not take reasonable measures to prevent the risk of serious harm. Instead, Sheriff Plummer allowed Villella, who was unsupervised and undisciplined for his prior misconduct, to use this area of jail to rape and sexually assault Ms. Myers in violation of her Eighth and Fourteenth Amendments. Therefore, Ms. Myers sets forth sufficient facts to show Sheriff Plummer had actual knowledge of the risk of serious harm, yet was deliberately indifferent by failing to take measures to prevent injury to inmates, such as Ms. Myers.

**IV.     Plaintiffs Did Not Bring An Intentional Infliction Of Emotional Distress Claim Against Montgomery County Or Sheriff Streck.**

Plaintiff's complaint did not raise a claim against Sheriff Streck in his individual capacity, and he is not a named defendant. Additionally, the Complaint excepts Montgomery County as a defendant on the emotional distress claim. Thus, the motion to dismiss on this claim is moot.

### Conclusion

For the above stated reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Kenneth J. Ignozzi
Kenneth J. Ignozzi (0055431)
Attorney for Plaintiff
Dyer, Garofalo, Mann, & Schultz
131 N. Ludlow Street, Suite 1400
Dayton, OH 45402
Tel:  (937) 223-8888; Fax:  (937) 824-8630
Email: kignozzi@dgmslaw.com

### CERTIFICATE OF SERVICE

The undersigned does hereby certify that this document was electronically filed on this 26th day of March, 2019 and a copy was sent to the following:

Benjamin A. Mazer
Anne A. Jagielski
Assistant Prosecuting Attorney
**Montgomery County Prosecutor's Office**
301 West Third Street, P.O. Box 972
Dayton, OH  45422
*Counsel for Montgomery County Board of County Commissioners & Sheriff Rob Streck*

Respectfully submitted,

/s/ Kenneth J. Ignozzi
Kenneth J. Ignozzi, Esq. (0055431)
Attorney for Plaintiff