UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER MYERS, | : | Case No. 3:18-cv-00409 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| MONTGOMERY COUNTY BOARD OF COMMISSIONERS, et al. | : | |
| | : | |
| Defendants. | | |

___

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANTS MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS AND MONTGOMERY COUNTY SHERIFF ROB STRECK TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (DOC. 12)**

___

Pending before the Court is the Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 12) of Defendants Montgomery County Board of County Commissioners and Montgomery County Sheriff Rob Streck (the "Motion"). The Motion is fully briefed and ripe for review. (Docs. 12, 14, 15, 17.) As explained in the Court's June 5, 2019 Order that allowed Plaintiff Jennifer Myers ("Myers") to file a sur-reply to the Motion, the Court considers the Motion to be brought by the following parties to dismiss all claims against them: (1) Defendant Montgomery County Board of County Commissioners (the "County")[1]; (2) Defendant Phil Plummer, Montgomery County Sheriff ("Plummer"); and (3) Montgomery County Sheriff Rob Streck ("Streck"). (Doc. 16.) As explained in that same Order, by virtue of succeeding Plummer as Montgomery County Sheriff, Streck was automatically substituted for Plummer with respect to

___

[1] The Complaint indicates that Myers is suing Montgomery County by way of suing the Montgomery County Board of Commissioners. (Doc. 1 at ¶5.) The Complaint also indicates that it names the Board "only in their official capacity." (*Id.*)

1

claims brought against Plummer in his official-capacity (only) as Montgomery County Sheriff, pursuant to Fed. R. Civ. P. 25(d).  (*Id.*)  Defendant Franco Rodio Villella ("Villella") is not a party to the Motion.

For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.  The Court dismisses all claims against Plummer, Streck, and the County, except for Myers' 42 U.S.C. § 1983 claim against the County for municipal liability with respect to excessive use of force or violation of bodily integrity on theories of (a) the existence of a policy of inadequate training or supervision, and (b) the existence of a custom of tolerance or acquiescence of federal rights violations.  This case will proceed on Myers' remaining claims.

I.     **BACKGROUND**

According to the Complaint, on December 11, 2018, while an inmate at the Montgomery County Jail ("Jail"), Myers was raped by Villella in a bathroom stall at the Jail.  At the time, Villella was on duty as a corrections officer employed by Montgomery County at the Jail.  Myers alleges that Villella forced himself upon her and raped her, causing physical and emotional injuries.  The Complaint states that Myers then "immediately reported the sexual assault to officers of the Montgomery County jail," but Villella and other officers denied Myers medical care for her injuries, instead placing her in a cold cell for hours with no blanket, mat, or pillow.  (Doc. 1 at ¶¶13-15.)  Myers further alleges that she was then taken to a room with a window and forced to completely undress while male officers watched her through a window, before being transported to a hospital for medical treatment.

The Complaint also alleges that, at all relevant times, Plummer was the Sheriff of Montgomery County and a policy maker for the County with respect to customs, practices, policies, and procedures at the Jail.  Myers asserts that policies, lack of training, lack of

supervision, and/or lack of discipline for corrections officers have allowed assaults of inmates by corrections officers at the Jail, and that there has been a pattern of such assaults. A number of examples of alleged assaults by correction officers on those in custody at the Jail are referenced, and the Complaint also alleges that a pattern and practice of poor supervision allowed such assaults to take place. Myers further alleges that there is a custom, policy, and practice to allow serious acts of violence and nonconsensual sexual acts, such that the Jail's corrections officers believe that they can engage in those acts without repercussions or significant repercussion. The Complaint claims that the Defendants' actions were done with deliberate indifference, and that the practice and customs proximately caused Villella's misconduct.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this Rule "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (2009), quoting *Twombly*, 550 U.S. at 547. A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*,

550 U.S. at 554-55. "The Court need not accept as true, however, a legal conclusion couched as factual allegations." *Id*. If a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

III. **ANALYSIS**

Myers filed her Complaint on December 18, 2018. It brings several claims against three defendants: (1) the County, through suing the Montgomery County Board of Commissioners; (2) Plummer; and (3) Villella. (Doc. 1.)

The Complaint is not a model of clarity. It contains five causes of action (or counts), but breaks the first cause of action into six branches—each of which implicates 42 U.S.C. § 1983 ("Section 1983").[2] Those branches are: (1) "Excessive Use of Force"; (2) "Denial of Medical Care"; (3) "Substantive Due Process Right to Bodily Integrity"; (4) "Policies and Procedures"; (5) "Violation of Equal Protection Clause"; and (6) "Failure to Supervise and Discipline." Myers brings her Section 1983 claims against all defendants both in their individual and official capacities, except that the claims against the Board (County) are only brought in the Board's official capacity. (Doc. 1 at PAGEID 8.)

Counts two and five of the Complaint allege state law violations for "Malice and Gross, Wanton, Willful, and Reckless Wrongful Conduct" and "Intentional Inflict of Emotional Distress," respectively. Those two counts are brought only against Plummer and Villella in their individual capacities. (*Id*. at PAGEID 14, 16.) Counts three and four of the Complaint are brought only against Villella in his individual capacity; therefore, they are not currently at issue. (*Id*. at PAGEID

---

[2] It also appears that the headings/titles for Branches 4 and 5 of the First Cause of Action were switched. Branch 5 is titled "Violation of Equal Protection Clause," but does not appear to contain any allegations concerning an equal protection clause claim, while Branch 4 (titled "Policies and Procedures") does contain allegations concerning an equal protection clause claim. Branch 5 contains allegations concerning policies and procedures, which corresponds with the title to Branch 4, while Branch 4 never references policies or procedures except in its heading/title.

4

15.)

### A. Plaintiff's Claims Under 42 U.S.C. § 1983 ("First Cause of Action")

"Section 1983 provides a cause of action for deprivation, under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994).[3] "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Section 1983 individual-capacity claims differ from Section 1983 official-capacity claims. *Peatross v. City of Memphis*, 818 F.3d 233, 240-41 (6th Cir. 2016). "[A]n individual-capacity claim seeks to hold an official personally liable for the wrong alleged." *Id*. at 241. On the other hand, "[a]n official-capacity claim against a person is essentially a claim against the municipality." *Id.*; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations marks omitted).

"[W]here the governmental entity itself is also a defendant, a claim against an official or employee of the entity in their official capacity is superfluous or redundant." *Day v. DeLong*, 358 F. Supp. 3d 687, 700 (S.D. Ohio 2019). "Here the Montgomery County Board of Commissioners is named, thus, Montgomery County stands accused" of the Section 1983 violations. *Id*. Myers'

---

[3] Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. … "

Section 1983 claim is also brought against both Plummer and Villella in their official capacities; those claims are construed as claims against the municipality, i.e., the County. *Id.*, citing *Kentucky v, Graham*, 473 U.S. 159, 166 (1985) (a claim or suit against an individual government employee in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent," and "is, in all respects other than name, to be treated as a suit against the entity."). Therefore, the Section 1983 official capacity claims are superfluous and redundant. The Section 1983 official capacity claims against Streck (having been substituted in as a party for the official capacity claims against Plummer) are dismissed.[4] *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013); *Hines v. Town of Vonore*, 912 F. Supp. 2d 628, 640-41 (E.D. Tenn. 2012).

The Motion argues that Plummer is entitled to qualified immunity on Myers' Section 1983 claims against him in his individual capacity. Qualified immunity generally shields government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To avoid the shield of qualified immunity, a plaintiff must properly plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)

---

[4] The Court notes that the only claims brought against Plummer in his official capacity (and therefore now against Streck) are the Section 1983 claims. Likewise, the only claims brought against Villella in his official capacity are the Section 1983 claims; however, Villella has not moved to dismiss those (or any) claims.

(internal quotation marks omitted). "[I]t is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct." *Stoudemire v. Mich. Dep't. of Corrs.*, 705 F.3d 560, 570 (6th Cir. 2013).

### a. Excessive Use of Force and Violation of Bodily Integrity

Branches 1, 3, 5, and 6 of the first cause of action (Section 1983) all involve allegations of excessive force or violation of bodily integrity. (Doc. 1 at PAGEID 9-10, 12-14.) They relate to Villella's assault of Myers. A claim for excessive use of force is brought under the Fourteenth Amendment's Due Process Clause, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989); see also *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007). Likewise, a claim for violation of bodily integrity is brought under the Fourteenth Amendment's Due Process Clause, which provides for a right "to personal security and to bodily integrity" from sexual abuse or sexual assault. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).

#### i. Analysis of Plummer's Individual Capacity Liability

The Complaint does not allege that Plummer was personally present at, or involved in, the alleged assault of Myers by Villella. (Doc. 1.) Instead, Myers seeks to hold Plummer liable in his individual capacity under a theory of supervisory liability. (*See, e.g.,* Doc. 14 at PAGEID 98.)

"Supervisors are often one step or more removed from the actual conduct of their subordinates; therefore, the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Peatross*, 818 F.3d at 241. "[A] mere failure to act will not suffice to establish supervisory liability." *Id*. Instead, "supervisory liability requires some active unconstitutional behavior on the part of the supervisor." *Id*. (internal quotation marks omitted). "However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of

the constitutional violation." *Id*. at 242. "[A]t a minimum, the plaintiff must show that the [supervisor] defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" subordinate. *Id.*

Unlike municipal liability claims (discussed below), individual capacity claims for failure to train or supervise require "direct participation in or encouragement of the specific acts." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). "A supervisory official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff demonstrates that the supervisor encouraged <u>the specific incident</u> of misconduct or in some other way directly participated in it. … Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (emphasis added). *Accord*: *Coley v. Lucas Cnty.*, 799 F.3d 530, 541-542 (6th Cir. 2015) ("[i]n order to establish personal liability for a failure to train and supervise, there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (internal quotation marks omitted); *Claiborne Cnty.*, 103 F.3d at 511 (same in context of alleged violation of bodily integrity).

As part of the inquiry, the Court "also considers whether there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross*, 818 F.3d at 242. "Accordingly, where an official's execution of his or her job function causes injury to the plaintiff, the official may be liable under the supervisory-liability theory." *Id*. However, "[t]here must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury." *Essex*, 518 F. App'x at 355.

The Complaint fails to state a viable claim against Plummer in his individual capacity. Even assuming that the Complaint adequately alleges the first element of a Section 1983 claim, it

does not contain sufficient factual allegations to state such a claim that is plausible on its face in light of the claim's second element, which involves causation. *Iqbal*, 556 U.S. at 697. The factual allegations of the Complaint do not show that Plummer "encouraged the specific incident of misconduct" (i.e., Villella's assault of Myers) or "directly participated in it." *Combs*, 315 F.3d at 558. The Complaint's broad, conclusory allegations concerning Plummer are insufficient to save the claim. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) ("[e]ven assuming the allegations in [the] complaint are true, [plaintiff] has not averred that any of the supervisory officials who are defendants in this case actively participated in or authorized" the alleged bad act, despite claiming that the supervisory officials were aware of the bad act); *Shehee v. Luttrell*, 199 F.3d 295, 300 (reversing judgment of district court in denying qualified immunity). Therefore, the Court dismisses Branches 1, 3, 5, and 6 of the First Cause of Action against Plummer in his individual capacity. *Iqbal*, 556 U.S. at 678.

### ii. Analysis of the County's Municipal Liability

"A municipal liability claim…must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the [municipality] is responsible for that violation." *Claiborne Cnty.*, 103 F.3d at 505-06. "For liability to attach, both questions must be answered in the affirmative." *Id.* at 506.

In contrast to a failure to train or supervise claim against a supervisor in his <u>individual</u> capacity, such a claim against a municipality is "a broader claim" that concerns the municipality's policy or custom. *Essex*, 518 F. App'x at 355; *Peatross*, 818 F.3d at 241 (in a Section 1983 official-capacity claim, "the entity's policy or custom must have played a part in the violation of federal law.") (internal quotation marks omitted). "There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal

actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Jackson v. City of Cleveland*, Nos. 17-3840/3843, 2019 U.S. App. LEXIS 14809, at *64-65 (6th Cir. May 20, 2019), quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

A claim against a municipality does "not require direct participation in or encouragement of the specific acts" but rather "may be premised on a failure to act." *Essex*, 518 F. App'x at 355. To prevail on a municipal liability claim under an inaction theory, a plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that its deliberate indifference[5] in its failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Claiborne Cnty.*, 103 F.3d at 508.

A plaintiff can show that the municipality was the "moving force" behind the alleged injury by showing that the municipality had a "policy or custom" that caused the violation of his or her rights. *Jackson*, 2019 U.S. App. LEXIS 14809, at *64 (internal quotation marks omitted) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) and *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Under *Monell*, a municipality can be found liable if the plaintiff "can establish that an officially executed policy, or the toleration of a custom[,] . . . leads to, causes, or results in the deprivation of a constitutionally protected right." *Claiborne Cnty.*, 103 F.3d at 507.

---

[5] "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence [will need to show] an obvious, deliberate indifference to" the alleged unconstitutional conduct. *Claiborne Cnty.*, 103 F.3d at 508 (granting summary judgment to defendants on Section 1983 claim where evidence did not establish a direct causal connection between the municipality's alleged policy of having a "good old boys network" and the sexual abuse inflicted by an employee).

Additionally, a municipality can be liable on a failure to train or supervise claim where the plaintiff "prove[s] the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). *Accord*: *Burgess v. Fischer*, 766 F. Supp. 2d 845, 850-51 (S.D. Ohio 2010) (denying municipality's motion for judgment on the pleadings regarding claims for failure to train or supervise, as well as failure to maintain policies and procedures to prevent the alleged assault, under Section 1983).

Here, the Complaint alleges that only Villella assaulted Myers and that only Villella was present at the assault. Myers contends under Branch 1 of the first cause of action that the County is liable "under the doctrines of *respondeat superior*, ratification, estoppel, and/or principal/agent." (Doc. 1 at ¶¶49-50.) The Complaint then goes on to assert a municipal liability claim for the assault under the third and fourth methods referenced above: (a) a failure "to properly train, supervise, and/or discipline the officer(s)," caused by the Defendants' deliberate indifference to the rights of Myers and others, resulted in Myers' injuries; and (b) policies or customs -- including a custom of tolerance or acquiescence to federal-rights violations -- caused the violation of Myers' rights.[6] (*See* Doc. 1 at PAGEID 12-14.)

Among other things, the Complaint alleges that, at the time of Myers' injury, (a) there had been a pattern and practice of assaults by corrections officers against inmates at the Jail (and of poor supervision that allowed such assaults); (b) a code of silence existed regarding officer misconduct; (c) it was the custom or policy of officers, the Sheriff, and other supervisors to (among other things) allow such misconduct; and (d) the County had notice of, and tolerated, a custom of

---

[6] Myers does not set forth facts to support her conclusory allegations concerning either of the first two methods referenced above: illegal official policy or ratification.

11

allowing such misconduct. (*See, e.g.,* Doc. 1 at ¶¶ 26, 29, 31, 34-36, 83, 95.) The Complaint also alleges that the Defendants had been deliberately indifferent in allowing such conduct and not properly supervising the corrections officers (as well as deliberately indifferent to Myers' federally protected rights), and that such custom or policy proximately caused the alleged assault against her. (*Id.* at ¶ 27-28, 33, 35-36, 85, 91-92.)

The Court finds that, at this early stage of the litigation, and viewing the allegations in a light most favorable to Myers, the Complaint adequately states a Section 1983 municipal liability claim against the County for alleged excessive use of force or violation of bodily integrity. Looking at the first element of a Section 1983 claim, and "[v]iewing the allegations in the light most favorable to [Myers] and accepting the facts and drawing all reasonable inferences from those factors in favor of [Myers], the Complaint adequately alleges the commission of acts that violated clearly established law." *Peatross*, 818 F.3d at 245. The Complaint contains sufficient factual allegations that, while Myers was an inmate at the Jail, she was assaulted and raped by Officer Villella, who is alleged to have been a County employee at the time. This fulfills the first prong's requirement that Myers assert the deprivation of a constitutional right. *Essex*, 518 F. App'x at 357 ("the sexual assaults on Plaintiff are clearly established violations of their constitutional rights"); *Claiborne Cnty.*, 103 F.3d at 506-07 ("no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.").

Looking at the second prong, Myers cannot base her official-capacity claims solely on Officer Villella's conduct because *respondeat superior* is not an available theory of recovery under Section 1983. *Claiborne Cnty.*, 103 F.3d at 507; *Monell*, 436 U.S. at 691; *Peatross*, 818 F.3d at 241 ("It is well-settled that 'government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior.*'"), quoting *Iqbal*, 556 U.S.

12

at 676. Instead, she must show that the County itself is a wrongdoer. *Id*.

The Complaint sufficiently alleges the existence of a policy of inadequate training and/or supervision, that the inadequacy was the result of the County's alleged deliberate indifference to the risk of assaults by corrections officers that violate constitutional rights, and that this alleged failure was the moving force—or closely related to—the assault of Myers. (*See, e.g.,* Doc. 1 at ¶¶ 8, 22, 26, 29-32, 89-95.) At this early stage, the allegations are sufficient to make a facially plausible claim for Section 1983 municipal liability on a failure to train or supervise theory. (*Id.*)

The Complaint also sufficiently alleges that the existence of a custom of tolerance or acquiescence of federal rights violations led to, caused, or resulted in the alleged assault of Myers by Officer Villella. She alleges (1) the existence of a pattern of assaults by corrections officers, (2) the County's notice or constructive notice, (3) the County's tacit approval of the unconstitutional conduct such that its deliberate indifference in a failure to act amounts to a custom or policy of inaction, and (4) that the custom or policy of inaction was the moving force or direct causal link in the alleged assault against Myers. (*See* Doc. 1 at ¶¶ 26, 29-33, 79-88, 90-92, 95.) At this early stage, the allegations are sufficient to make a facially plausible claim for Section 1983 municipal liability on a custom of tolerance or acquiescence of federal rights violations theory. (*Id.*)

In summary, Myers' allegations in support of two of her methods for imposing municipal liability on the County under Section 1983 are sufficient to withstand dismissal at this stage.

### b. Deliberate Indifference to Serious Medical Needs

Branch 2 of the first cause of action alleges a Section 1983 claim for deliberate indifference to serious medical needs.[7] (Doc. 1 at ¶¶61-67.) "A pretrial detainee's claim for deliberate

---

[7] Branches 5 and 6 of the First Cause of Action do not appear to involve allegations regarding medical needs.

indifference to a serious medical need arises under the Fourteenth Amendment, but it is analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Guy v. Metro. Gov't of Nashville*, 687 F. App'x 471, 477 (6th Cir. 2017) (internal quotation marks omitted). "The Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (internal quotation marks omitted). "Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id.*

### i. Analysis of Plummer's Individual Capacity Liability

Jail officials' deliberate indifference violates a pre-trial detainee's rights "[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care" for a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A claim for deliberate indifference to serious medical needs has both an objective and a subjective component. *Guy*, 687 F. App'x at 477-78; *Blackmore*, 390 F.3d at 895-96.

First, the objective component requires the existence of a sufficiently serious medical need. *Guy*, 687 F. App'x at 477-78; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Sixth Circuit directs that "where a plaintiff's claims arise from an injury 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' . . . it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore*, 390 F.3d at 899–900 (citation omitted).[8] The Court finds that Myers' allegations that she was raped, suffered physical injuries caused by the rape, and then

---

[8] "Where a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899 (internal quotation marks omitted).

14

placed in a cell (*see, e.g.,* Doc. 1 at ¶¶ 12, 15) meet this component. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("Rape is clearly a severe injury.").

Second, the subjective component requires "a subjective determination that the official had a sufficiently culpable state of mind in denying medical care." *Pond v. Haas*, 674 F. App'x 466, 470 (6th Cir. 2016) (internal quotation marks omitted). A plaintiff "must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). "Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that 'an official's failure to alleviate a significant risk **that he should have perceived but did not**, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (emphasis in original), quoting *Farmer*, 511 U.S. at 838.

Beyond mere negligence, "[t]he official must have actually known of the serious medical need or circumstances clearly indicating such a need," and that "by ignoring the medical need, the official . . . disregarded a substantial risk of serious harm to the inmate." *Pond*, 674 F. App'x at 470 (internal citations and quotation marks omitted). See also *Blackmore*, 390 F.3d at 895-96 (it is "more than mere negligence" but something "less than acts or omissions for the very purpose of causing harm"). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896.

Here, Myers makes no allegations that Plummer ever personally interacted with her. She alleges that she reported the sexual assault to "officers," that "Defendant Villella and other officer[s] of Defendant Montgomery County jail denied [her] medical care for her injuries," and

15

that "Defendant's officers" placed her in a cold cell for hours before transporting her to the hospital for medical treatment. (Doc. 1 at ¶¶13-15.) Although she also alleges that the "Defendants were informed by Plaintiff of her assault, which necessitated medical care, and deliberately and indifferently did not provide medical treatment at that time, instead placing her in a cell alone for hours" (Doc. 1 at ¶ 63), Myers fails to plead facts to support that allegation with respect to Plummer. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The Complaint fails to adequately "allege facts which, if true, would show that [Plummer] subjectively perceived facts from which to infer substantial risk to [Myers], that [Plummer] did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. See also *Pond*, 674 F. App'x at 470-71 (affirming dismissal of claim for deliberate indifference to serious medical needs where plaintiff did not sufficiently plead specific factual allegations). Therefore, the Court dismisses Branch 2 of the First Cause of Action against Plummer in his individual capacity.

### ii. Analysis of the County's Municipal Liability

As discussed above, counties may not be held vicariously liable under Section 1983 for actions of their employees or agents. See *Monell*, 436 U.S. at 694. "Under *Monell* . . . county liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the county." *Petty v. Cnty. of Franklin*, No. 06-3552, 2007 U.S. App. LEXIS 3377, at *17 (6th Cir. Feb. 16, 2007).

Here, Myers does not allege a policy or custom of the County in the context of her Section 1983 claim that the County was deliberately indifferent to her serious medical needs. The Complaint's allegations that implicate policies or customs (or a failure to properly train, supervise, or discipline) involve allegations of deliberate indifference to force, abuse, violence, or assault, not a need for medical care. (*See* Doc. 1 at ¶¶26, 29, 31-33, 79-95.) Therefore, the Court dismisses

Branch 2 of the First Cause of Action against the County. See *Hanner v. City of Dearborn Heights*, 450 F. App'x 440, 447 (6th Cir. 2011) (affirming dismissal of Section 1983 deliberate indifference to serious medical need claim against municipality where complaint failed to identify a municipal policy or custom in support of the claim); *Robertson v. Shelby Cnty.*, No. 05-2579 P, 2007 U.S. Dist. LEXIS 105036, at *17-18 (W.D. Tenn. July 13, 2007) (dismissing Section 1983 claim against county concerning denial or delay of medical care for serious medical need where there were no allegations that any county policy or custom directly caused the injuries).

### c. Violation of Equal Protection Clause

Branch 4 of the First Cause of Action, despite not corresponding with its title, alleges an equal protection claim involving gender discrimination. (Doc. 1 at PAGEID 11-12.)

#### i. Analysis of Plummer's Individual Capacity Liability

The allegations in Branch 4 do not implicate Plummer. The Section 1983 claim against Plummer in his individual capacity on the basis of a violation of the Equal Protection Clause of the Fourteenth Amendment is dismissed for failure to state a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

#### ii. Analysis of the County's Municipal Liability

The allegations in Branch 4 refer to actions or omissions by Villella. (Doc. 1 at PAGEID 11-12.) As explained above, the Complaint's allegations that implicate policies or customs (or a failure to properly train, supervise, or discipline) involve allegations of deliberate indifference to force, abuse, violence, or assault, not gender discrimination. (*See* Doc. 1 at ¶¶26, 29, 31-33, 79-95.) Therefore, the Court dismisses Branch 4 of the First Cause of Action against the County.

### B. **Plaintiff's State Law Claims (Counts Two and Five)**

The Complaint's second and fifth causes of action (counts) allege state law claims. (Doc. 1 at PAGEID 14, 16.) Both are brought against "[a]ll Defendants in their individual capacities,

17

except the Board of County Commissioners." (*Id.*)  Therefore, Myers does not bring these counts against the County, and she specifically conceded this in her briefing with respect to the intentional infliction of emotional distress claim.  (Doc. 14 at PAGEID 113; Doc. 1 at ¶4.)

Regarding Plummer, he is entitled to statutory immunity in his individual capacity for these state law claims.  An Ohio statute (O.R.C. § 2744.03(A)(6)) gives an employee of a political subdivision immunity from liability for injuries allegedly caused by any act or omission in connection with a governmental or proprietary function, unless one of the following exceptions applies:

> "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;  [or] (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . ."

Myers fails to show—or even argue—that immunity does not apply to her state law claims against Plummer in his individual capacity or that any exception to immunity applies.

Additionally, the Complaint does not set forth facts to establish one of the exceptions to statutory immunity on these state law claims.  She alleges that Plummer's conduct was <u>in</u> the scope of his employment.  (Doc. 1 at ¶25.)  As discussed above, Myers does not allege that Plummer was personally present at, or involved in, the assault by Villella.  The allegations with respect to Plummer in his individual capacity lack facts that would allow one to draw the reasonable inference of action or omission "with malicious purpose, in bad faith, or in a wanton or reckless manner."[9]  O.R.C. § 2744.03(A)(6); *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Diver v.*

---

[9] Ohio courts have defined these various terms in the context of O.R.C. § 2744.03(A)(6) in the following way. "Malicious purpose" is "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct."  *Rural Bldg. of Cincinnati LLC v. Mercer*, 2017-Ohio-7226, 96 N.E.3d 882, 888 (Ohio Ct. App. 2017).  "Bad faith is a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id*. (internal quotation marks omitted).  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v.*

*Dobson*, No. 3:12-cv-957, 2014 U.S. Dist. LEXIS 43659, at *20-21 (N.D. Ohio Mar. 31, 2014) (granting motion to dismiss state law claim against sheriff's deputies pursuant to O.R.C. 2744.03(A) where plaintiff did not allege factual content to meet the plausibility standard set forth by *Twombly* and *Iqbal*).

Therefore, the Court dismisses Counts Two and Five against Plummer and the County.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** the Motion of Defendants Montgomery County Board of County Commissioners and Montgomery County Sheriff Rob Streck to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 12). All claims against the Montgomery County Board of County Commissioners, Montgomery County Sheriff Phil Plummer, and Montgomery County Sheriff Rob Streck in the Complaint are dismissed, except for Myers' 42 U.S.C. § 1983 claim against the County for municipal liability with respect to excessive use of force or violation of bodily integrity on theories of (a) the existence of a policy of inadequate training or supervision, and (b) the existence of a custom of tolerance or acquiescence of federal rights violations. This case will proceed on Myers' remaining claims, including her claims against Defendant Franco Rodio Villella.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, June 21, 2019.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

*City of Massillon*, 2012-Ohio-5711, 983 N.E.2d 266, 273 (Ohio 2012). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*.